McCREADY v HOFFIUS

BAIZ v HOFFIUS

Docket Nos. 108995, 108996. Argued October 7, 1998 (Calendar No. 16). Decided December 22, 1998. Opinion modified *post*, 1235.

Kristal McCready and Keith Kerr brought an action in the Jackson Circuit Court, Edward J. Grant, J., against John and Terry Hoffius, alleging discrimination under the Civil Rights Act, MCL 37.2502(1); MSA 3.548(502)(1), in failing to rent them certain residential property because they were unmarried. The defendants moved for summary disposition on the ground that the plaintiffs failed to state a claim upon which relief could be granted because the act does not protect unmarried cohabitation. They argued in the alternative that, if it does, it is unconstitutional because it would force them to violate sincerely held religious beliefs against unmarried cohabitation. The court granted summary disposition for the defendants, determining that the Civil Rights Act does not protect unmarried cohabitation.

Rose Baiz and Peter Perusse brought a similar action in the Jackson Circuit Court against John and Terry Hoffius. The court, Alexander C. Perlos, J., granted summary disposition for the defendants.

The Court of Appeals, CORRIGAN, P.J., and TAYLOR and D. A. JOHNSTON, JJ., consolidated both appeals and affirmed. 222 Mich App 210 (1997) (Docket Nos. 185152, 185314). The plaintiffs appeal.

In an opinion by Justice KELLY, joined by Chief Justice MALLETT, and Justices BRICKLEY and CAVANAGH, the Supreme Court *held*:

The defendants discriminated against the plaintiffs on the basis of their marital status in violation of the Civil Rights Act. Defendants' constitutional freedom of religion rights do not supersede the plaintiffs' civil rights under the act.

1. The purpose of the Civil Rights Act is to prevent discrimination based on membership in certain classes, including marital status. Marital status is defined in the context of the presence or absence of marriage. The plaintiffs' marital status, and not their conduct in living together, is the root of the defendants' objection to renting apartments to the plaintiffs. The defendants' refusal to rent their apartments to plaintiffs solely because they are unmarried constituted marital status discrimination in violation of the

Civil Rights Act. The act protects unmarried cohabitants against such housing discrimination.

2. The Court of Appeals panel decided that the Legislature would not have intended the Civil Rights Act to insulate conduct made criminal by the statute prohibiting lewd and lascivious behavior by unmarried couples. MCL 750.335; MSA 28.567. However, the statute does not prohibit cohabitation per se. To be found guilty under it, the couple must lewdly and lasciviously associate. In this case, there is insufficient evidence that the plaintiffs intended to engage in lewd and lascivious behavior. By protecting plaintiffs' right to equal access to housing, a court cannot be said to legitimize criminal conduct.

3. A law burdening a religious practice must be neutral and of general applicability. The Civil Rights Act was conceded to be neutral. It is also generally applicable because it prohibits all discrimination and has no religious motivation. It contains no language singling out any religious group or practice, applies to all people involved in renting or selling property, and does not specify or imply applicability to a particular religious group. Thus, it does not violate the Free Exercise Clause of the First Amendment of the United States Constitution. Nor does the act violate the defendants' religious freedom under Const 1963, art 1, § 4. Even assuming that the defendants' beliefs are sincerely held and religiously based and that the Civil Rights Act imposes a burden on those beliefs, defendants' religious freedom rights have not been violated. A compelling state interest in eradicating discrimination in real estate transactions justifies the burden on their beliefs. In addition, a less obtrusive form of regulation has not been shown to be available to the state.

Reversed and remanded.

Justice Boyle, joined by Justice Weaver, dissenting, stated that the pertinent language of the statute precludes discrimination on the basis of marital status; the term marital status, however, like marital communications and marital deductions, does not encompass the status of being an unmarried cohabiting couple. It is immaterial whether there is insufficient evidence that plaintiffs in this case intended to engage in lewd and lascivious behavior. What is material is that it is the declared public policy of the state to discourage such behavior. The Legislature can define marital status to include cohabitants, but it has not done so, and the Supreme Court should not do so by judicial fiat.

Justice Weaver, dissenting, stated that, rather than holding that some conduct beyond cohabiting while sharing sexual relations is necessary evidence of lewd and lascivious behavior under MCL

750.335; MSA 28.567, *People v Davis*, 294 Mich 499 (1940), and *People v June*, 294 Mich 681 (1940), stand for nothing more than that the corpus delicti of a charged offense may not be proved by extrajudicial, unsupported confessions.

Justice Taylor took no part in the decision of this case.

*Fleming & Fleming, P.C.* (by *James B. Fleming* and *Anne D. Fleming*); *Jerrold Schrotenboer*, of counsel, for plaintiffs-appellants.

*LaFlamme & Mauldin, P.C.* (by *Richard N. LaFlamme*), for defendants-appellees.

Amici Curiae:

*Rudolph A. Serra* and *Thomas F. Coleman* for Triangle Foundation and Spectrum Institute.

*Stancato & Tragge, P.C.* (by *Henry Stancato*), for Fair Housing Center of Metropolitan Detroit, Jackson County Fair Housing Center, Fair Housing Center of Greater Grand Rapids, Tri County Fair Housing Center, Fair Housing Center of Washtenaw County, and American Civil Liberties Union Fund of Michigan.

Kelly, J. We granted leave in this case to determine whether the defendants violated the Civil Rights Act,[1] when they refused to rent to the unmarried plaintiffs. We conclude that the defendants discriminated against the plaintiffs on the basis of their marital status in violation of the Civil Rights Act. Defendants' constitutional freedom of religion rights[2] do not supersede the plaintiffs' civil rights under the act. We reverse the decision of the Court of Appeals and

---

[1] MCL 37.2502(1); MSA 3.548(502)(1).
[2] Const 1963, art 1, § 4; US Const, Am I.

direct the circuit court to enter summary disposition in favor of plaintiffs.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants John and Terry Hoffius, a married couple, own residential property in Jackson, Michigan, which they rent. In June 1993, plaintiffs Kristal McCready and Keith Kerr answered defendants' advertisement about the property. Defendants refused to rent it to these plaintiffs when they learned that McCready and Kerr were single, but intended to live together. Similarly, plaintiff Rose Baiz telephoned defendants about the property a month later. Defendants refused to rent to Baiz, also, when they learned that she was not married to plaintiff Peter Perusse, yet planned to live with him. Defendant John Hoffius told these plaintiffs that unmarried cohabitation violated his religious beliefs.

Plaintiffs filed two separate complaints with the Jackson Fair Housing Commission. Testers from the commission posed as potential renters and contacted defendants. Defendants did not ask the marital status of all the testers. However, they refused to permit unmarried couples to inspect the apartments, claiming that the units were available only to married couples. They stated that usually they did not rent to unmarried couples.

Plaintiffs filed two separate actions in circuit court. Defendants moved for summary disposition, arguing in part that plaintiffs failed to state a claim upon which relief could be granted, because the Civil Rights Act does not protect unmarried cohabitation. Defendants argued alternatively that, if the act protects unmarried cohabitation, it is unconstitutional,

because it would force defendants to violate their sincerely held religious beliefs against unmarried cohabitation. Plaintiffs also filed summary disposition motions.

The motions were heard separately, but decided similarly. Both circuit court judges opined that the cases involved statutory interpretation, and both declined to address the constitutional issues. The judges noted that the Civil Rights Act protects status, not conduct. They opined that unmarried cohabitation was unprotected conduct. Accordingly, they determined that the Civil Rights Act does not protect unmarried cohabitation. Both granted summary disposition in favor of the defendants.

Plaintiffs appealed to the Court of Appeals, which consolidated the appeals and affirmed the circuit court decisions.[3] This Court granted plaintiffs' applications for leave to appeal.[4]

## II. ANALYSIS

### A. STANDARD OF REVIEW

In granting the defendants' motions for summary disposition, neither circuit court specified the basis for its order. This Court reviews orders granting summary disposition de novo. *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996). We consider the evidence in the light most favorable to the nonmoving party, and make all legitimate inferences

---

[3] 222 Mich App 210; 564 NW2d 493 (1997).

[4] 457 Mich 851 (1998).

in that party's favor. *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

The determination whether the Court of Appeals properly interpreted the meaning of "marital status" as used in the act is another question of law that we review de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

### B. MARITAL STATUS

The Civil Rights Act prohibits discrimination based on marital status. The question before us is whether the state's interest in providing equal access to housing to all regardless of their membership in prescribed categories supersedes defendants' religious rights. It is complicated by the existence of an antiquated and rarely enforced statute prohibiting lewd and lascivious behavior.[5]

First, we examine the language of the Civil Rights Act itself. It provides, in pertinent part:

> (1) A person engaging in a real estate transaction, or a real estate broker or salesman, shall not on the basis of religion, race, color, national origin, age, sex, familial status, or marital status of a person or a person residing with that person:
> (a) Refuse to engage in a real estate transaction with a person. [MCL 37.2502; MSA 3.548(502).]

---

[5] MCL 750.335; MSA 28.567 provides:

Any man or woman, not being married to each other, who shall lewdly and lasciviously associate and cohabit together, and any man or woman, married or unmarried, who shall be guilty of open and gross lewdness and lascivious behavior, shall be guilty of a misdemeanor . . . .

Being that the act is remedial, we construe it liberally. *Dep't of Civil Rights ex rel Parks v General Motors Corp*, 412 Mich 610, 650; 317 NW2d 16 (1982). We strive to give effect to the Legislature's intent in drafting it. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

The Court of Appeals noted correctly that the purpose of the act was to prevent discrimination based on membership in certain classes. It was intended to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases. 222 Mich App 210, 215; 564 NW2d 493 (1997); *Miller v C A Muer Corp*, 420 Mich 355, 362; 362 NW2d 650 (1984). However, we cannot agree with the Court of Appeals determination that the act does not protect the plaintiffs in this case.

The sole factor that defendants employed in determining that plaintiffs were unworthy of renting their available apartments was plaintiffs' marital status. The Legislature's intent to prohibit discrimination based on this factor is made clear by the inclusion of "marital status" in the act. "The language is simple, and its meaning is not difficult to comprehend." *Markham v Colonial Mortgage Service Co*, 196 US App DC 50, 53; 605 F2d 566 (1979). It seeks to prohibit discrimination "based on *whether* a person is married." *Miller, supra* at 363. Nothing in the legislative history of the Civil Rights Act limits the term "marital status" to protecting married couples only.

When faced with a similar argument, that "marital status" does not include unmarried couples, the California Supreme Court recently determined that "[t]he statutory language banning discrimination based on 'marital status' naturally carries both meanings [mar-

ried and unmarried]." *Smith v Fair Employment and Housing Comm*, 12 Cal 4th 1143, 1156; 51 Cal Rptr 2d 700; 913 P2d 909 (1996). We agree. Where the language of a statute is clear and unambiguous, the courts must apply the statute as written. *Turner, supra* at 27.

In this case, the defendants refused to rent to plaintiffs because their marital status is "single" and, therefore, unmarried.[6] We will not read the act to shield such a discriminatory act.

### 1. STATUS VERSUS CONDUCT

The defendants argue that they did not discriminate against plaintiffs because of their marital status; rather, they refused to rent to plaintiffs on the basis of their perception of plaintiffs' conduct.

In *Swanner v Anchorage Equal Rights Comm*,[7] the Alaska Supreme Court interpreted the definition of marital status as used in its statute, one similar to Michigan's, which prohibits discrimination in real estate transactions.[8] In *Swanner*, the court affirmed an Anchorage Equal Rights Commission order that the landlord's policy against renting to unmarried couples constituted unlawful discrimination based on marital status. The landlord would have rented his properties to certain couples had they been married, and refused to rent to them after learning they were single. The court concluded that the landlord had

---

[6] "The usual answer to a query about one's marital status is 'married,' 'single,' 'divorced,' 'widowed,' or 'separated.' " *Miller, supra* at 362.

[7] 874 P2d 274 (Alas, 1994), cert den 513 US 979 (1994).

[8] Alas Stat, § 18.80.240.

unlawfully discriminated on the basis of marital status. *Id.* at 278.

When the Alaska Supreme Court decided *Swanner*, the Alaska Legislature had already struck down its statute prohibiting cohabitation. That court's analysis of "marital status" is still instructive to this Court. The landlord in *Swanner* argued, as the landlords argue here, that he did not discriminate against anyone on the basis of marital status. Rather, he asserted, he discriminated because of the applicant's conduct, and such discrimination is not prohibited by the statute.

The court in *Swanner* found that the landlord "cannot reasonably claim that he does not rent or show property to cohabitating couples based on their conduct (living together outside of marriage) and not their marital status when their marital status (unmarried) is what makes their conduct immoral in [the landlord's] opinion." *Id.* at 278, n 4. We agree with this analysis.

Here, the defendants contend that their refusal to rent to plaintiffs was based on plaintiffs' conduct, not on their status, and that this discrimination is legally acceptable. We find that defendants' reasoning defies "legal examination and legislative resolve alike." *Dane Co v Norman*, 174 Wis 2d 683, 693; 497 NW2d 714 (1993) (Heffernan, C.J., dissenting). By rejecting this argument, we join the high courts of Alaska, Massachusetts, and California that recently rejected similar arguments.[9]

In *Attorney General v Desilets*, the Massachusetts Supreme Judicial Court found that an

---

[9] *Swanner, supra, Attorney General v Desilets*, 418 Mass 316, 320; 636 NE2d 233 (1994), and *Smith, supra.*

analysis of the [defendant landlords'] concerns shows that it is marital status and not sexual intercourse that lies at the heart of the defendants' objection. If married couple A wanted to cohabit in an apartment owned by the defendants, they would have no objection. If unmarried couple B wanted to cohabit in an apartment owned by the defendants, they would have great objection. The controlling and discriminating difference between the two situations is the difference in the marital status of the two couples. [*Id.* at 320.]

Plaintiffs' marital status, and not their conduct in living together, is the root of the defendants' objection to renting apartments to the plaintiffs.

The Court of Appeals accurately noted that the public policy of this state favors the institution of marriage. Acknowledging that, we agree with the court in *Smith, supra,* that "[o]ne can recognize marriage as laudable, or even as favored, while still extending protection against housing discrimination to persons who do not enjoy that status."[10]

### 2. LEWD AND LASCIVIOUS CONDUCT

The Court of Appeals panel decided that the Legislature would not have intended the Civil Rights Act to insulate conduct made criminal by the statute prohibiting lewd and lascivious behavior by unmarried couples. MCL 750.335; MSA 28.567. Consequently, according to the panel, cohabitation must not be protected conduct under the Civil Rights Act. The panel "decline[d] to recognize · the Civil Rights Act as preventing housing discrimination against unmarried couples and at the same time legitimizing criminal

---

[10] *Smith, supra* at 1160.

conduct." *McCready, supra* at 216-217. We find the Court of Appeals reasoning unpersuasive.

By protecting plaintiffs' right to equal access to housing, the Court cannot be said to legitimize criminal conduct. The lewd and lascivious behavior statute has not been used to successfully prosecute unmarried couples who were cohabitating for nearly sixty years.[11]

In 1940, two married couples that had essentially swapped spouses were convicted of violating the statute. *Davis* and *June, supra.* This Court unanimously reversed the convictions. We found that the lewd and lascivious nature of the relationships had not been shown, although the prosecutor had provided proof that the men were cohabitating with each other's wives.

Recently, in the employment context, a federal district court reviewed the living arrangement of a police officer to determine whether he had violated Michigan's statute. At the time, the officer was living with a woman who was not his wife. The judge found that "[c]ohabitating with one who is not one's wife is not, without more, lewd and lascivious conduct." *Briggs v North Muskegon Police Dep't,* 563 F Supp 585, 591 (WD Mich, 1983).

The statute does not prohibit cohabitation per se. To be found guilty under it, the couple must "lewdly and lasciviously associate." In this case, there is insufficient evidence that the plaintiffs intended to engage in lewd and lascivious behavior.[12]

---

[11] *People v Davis,* 294 Mich 499; 293 NW 734 (1940), and *People v June,* 294 Mich 681; 293 NW 906 (1940).

[12] The parties have not directly attacked the constitutional validity of the statute. Thus, we will not undertake such an analysis.

Finally, the issue before this Court is not whether plaintiffs violated, or might in the future violate, the lewd and lascivious behavior statute. It is whether the defendants violated plaintiffs' civil rights. We find that they did.

### III. RELIGIOUS DEFENSES

The defendants assert that the Civil Rights Act violates their religious freedom rights under art 1, § 4 of the Michigan Constitution and under the First Amendment of the United States Constitution.

The United States Constitution forbids restrictions to the free exercise of religion. The United States Supreme Court recently ruled that the Religious Freedom Restoration Act is unconstitutional.[13] The method to test the constitutionality of alleged restrictions on religious freedom is found in *Employment Div, Oregon Human Resources Dep't v Smith.*[14] It holds that a law burdening a religious practice must be neutral and of general applicability.

The defendants concede that the Civil Rights Act is neutral. However, they contend that the act fails the general applicability prong of the test, because it creates nonreligious exemptions. They point to the exemptions concerning owner-occupied leased residences[15] and the exclusion of "marital status" from the forms of discrimination applicable to housing accommodations at state institutions of higher learning. Defendants conclude that, because the Legisla-

---

[13] *City of Boerne v Flores,* 521 US 507; 117 S Ct 2157; 138 L Ed 2d 624 (1997).

[14] 494 US 872; 110 S Ct 1595; 108 L Ed 2d 876 (1990).

[15] MCL 37.2503(1)(a), (b); MSA 3.548(503)(1)(a), (b).

ture provided these exemptions but no exemptions for religiously motivated landlords, the Civil Rights Act fails the general applicability prong.

We cannot agree. The law is generally applicable because it prohibits all discrimination and has no religious motivation. The statute contains no language singling out any religious group or practice. See *Swanner, supra* at 280. It "app[lies] to all people involved in renting or selling property, and do[es] not specify or imply applicability to a particular religious group." *Id.*

We agree with the California Supreme Court, which addressed this claim when made by the landlord in *Smith, supra.*

> [The landlord's] religion may not permit her to rent to unmarried cohabitants, but "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." [*Smith, supra* at 1161; accord, *Employment Div, supra* at 879.]

Thus, we conclude that the Civil Rights Act does not violate the Free Exercise Clause of the First Amendment of the United States Constitution.

Next, we turn to defendants' claim that the act violates their religious freedom under art 1, § 4 of the Michigan Constitution of 1963. We analyze the Civil Rights Act under the compelling state interest test developed by the United States Supreme Court in *Wisconsin v Yoder*[16] and *Sherbert v Verner.*[17]

---

[16] 406 US 205; 92 S Ct 1526; 32 L Ed 2d 15 (1972).
[17] 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963).

The test has five elements: (1) whether a defendant's belief, or conduct motivated by belief, is sincerely held; (2) whether a defendant's belief, or conduct motivated by belief, is religious in nature; (3) whether a state regulation imposes a burden on the exercise of such belief or conduct; (4) whether a compelling state interest justifies the burden imposed upon a defendant's belief or conduct; and (5) whether there is a less obtrusive form of regulation available to the state. *Yoder, supra* at 214-230.

In the instant case, the trial court and the Court of Appeals did not undertake this analysis because they found no discrimination. Thus, no legal or factual determinations were made with respect to this issue.

However, even if we were to remand the case for factual findings, defendants could not prevail on the legal questions. For purposes of analysis, we concede to the defendants' benefit the first three prongs of the test.

The fourth prong requires an examination of whether a compelling state interest in providing equal access to housing justifies the burden on defendants' beliefs. The Michigan Legislature has determined that the need for housing is so fundamental as to necessitate the passing of the Civil Rights Act. Its objective was to ensure that no one be denied equal access to housing on the basis of, among other things, their marital status. The state's need to provide equal access to such a fundamental need as housing outweighs defendants' religious beliefs that they should not rent to an unmarried couple.

The state does not require that the defendants violate their sincerely held religious beliefs. It requires only that, if they wish to participate in the real estate

market by offering housing for rent, they must comply with the Civil Rights Act. The burden placed on the defendants' religious beliefs affects their commercial activities sooner than their beliefs. See *Swanner, supra* at 283. In *United States v Lee*,[18] the Supreme Court stated:

> When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity.

Finally, defendants have provided no argument to convince us that the state could have accomplished its goal of equal access to housing by less obtrusive means. We have not identified a less obstrusive alternative to eradicate discrimination in real estate transactions.

The defendants' freedom to exercise their religion under the Michigan and federal constitutions is not violated by requiring their compliance with the Civil Rights Act under the facts of this case.

### IV. CONCLUSION

The defendants readily admit that they would have rented their housing accommodations to plaintiffs had plaintiffs been married to one another. Marital status is defined in the context of the presence or absence of marriage. Thus, the defendants' refusal to rent their apartments to plaintiffs solely because they are unmarried constituted marital status discrimination in violation of the Civil Rights Act. The act pro-

---

[18] 455 US 252, 261; 102 S Ct 1051; 71 L Ed 2d 127 (1982).

tects unmarried cohabitants against this housing discrimination.

The United States Supreme Court, in *Trafficante v Metropolitan Life Ins Co*,[19] stated that eradicating discrimination in housing is of the highest priority. Our holding is consistent with that laudable goal.

Even assuming that the defendants' beliefs are sincerely held and religiously based and that the Civil Rights Act imposes a burden on those beliefs, defendants' religious freedom rights have not been violated. A compelling state interest in eradicating discrimination in real estate transactions justifies the burden on their beliefs. In addition, a less obtrusive form of regulation has not been shown to be available to the state.

We reverse the decision of the Court of Appeals. Since defendants admitted that they would have rented to plaintiffs if plaintiffs had been married to one another, we determine that summary disposition in plaintiffs' favor is appropriate. We remand this case to the circuit court for entry of an order granting summary disposition in favor of plaintiffs and a determination of damages.

MALLETT, C.J., and BRICKLEY and CAVANAGH, JJ., concurred with KELLY, J.

BOYLE, J. (*dissenting*). The pertinent language of the statute precludes discrimination on the basis of marital status. There is no factual dispute that the defendants declined to rent their premises because the male and female plaintiffs were unmarried. Under these facts, the relevant "inquiry is if one is mar-

---

[19] 409 US 205, 211; 93 S Ct 364; 34 L Ed 2d 415 (1972).

ried . . . ." *Miller v C A Muer Corp*, 420 Mich 355, 362; 362 NW2d 650 (1984).

Black's Law Dictionary (6th ed), defines marital as "[r]elating to, or connected with the *status* of marriage; pertaining to a husband; incident to a husband." "Status" means "[s]tanding, state or condition, social position. The legal relation of individual to the rest of the community. The rights, duties, capacities and incapacities which determine a person to a given class. A legal personal relationship, not temporary in its nature nor terminable at the mere will of the parties, with which third persons and the state are concerned." It would appear that "marital status," which is not otherwise defined in the pertinent portion of the statute, MCL 37.2502(1); MSA 3.548(502)(1) refers to the status of being married. It follows logically that the term marital status, like marital communications and marital deductions, does not encompass the "status" of being an unmarried cohabiting[1] couple.

The majority correctly notes that California, Alaska, and Massachusetts have found that marital status carries the meaning of both married and unmarried. In my view, the language of Michigan's statute, which is the best evidence of the Legislature's intent, does not support this conclusion. However, even if the term were deemed ambiguous, the public policy embodied in statutes criminalizing cohabitation, MCL 750.335; MSA 28.567, and renouncing common-law marriage,

---

[1] Cohabitation is defined in Black's Dictionary, *supra*, as "[t]o live together as husband and wife." In *Dane Co v Norman*, 174 Wis 2d 683, 685; 497 NW2d 714 (1993), the Wisconsin Supreme Court held that living together is conduct, not status.

MCL 551.2; MSA 25.2$^2$ refute the claim that the Michigan Legislature intends to guarantee access to housing to individuals who choose to cohabit with persons of the opposite sex. Other courts addressing the issue have concluded that retention of "fornication statute," or the repeal by statute of common-law marriages, evidence a public policy inconsistent with defining marital status to encompass cohabitation. *State v French*, 460 NW2d 2 (Minn, 1990); *Mister v ARK Partnership*, 197 Ill App 3d 105; 553 NE2d 1152 (1990). See also *Jasniowski v Rushing*, 287 Ill App 3d 665; 678 NE2d 743 (1997) (*Mister* was held to be no longer controlling in light of the decriminalization of cohabitation by Illinois Public Act 86-490, effective January 1, 1990).

The Legislature has not repealed the prohibition against cohabitation. Contrary to the majority's implication, the fact that a criminal statute has not been successfully prosecuted does not somehow render the prohibited conduct legal or the criminal statute void. Not only has the Legislature failed to repeal this statute, first enacted in 1846, but, indeed, by the amendment of one word in 1931, the Legislature apparently sought to make prosecution under the statute simpler. 1931 PA 328 altered the opening sentence from "If any man *and* woman" to "[a]ny man *or* woman . . . ." (Emphasis added.) The effect of this amendment was to overrule earlier case law, see, e.g., *Delany v People*, 10 Mich 241 (1862); *People v Frye*, 248 Mich 678, 680; 227 NW 748 (1929), which held

<hr>

$^2$ The public policy of this state disfavors the grant of mutually enforceable property rights to knowingly unmarried cohabitants. *Carnes v Sheldon*, 109 Mich App 204; 311 NW2d 747 (1981) (accord RILEY, J.); *Featherston v Steinhoff*, 226 Mich App 584; 575 NW2d 6 (1997) (CORRIGAN, C.J.).

that the pre-1931 statutory language created an exception to the general rule that conviction or acquittal of one defendant has no legal effect on the status of other defendants. It now appears that the statute can be enforced against either or both individuals who cohabit and associate lewdly and lasciviously with a person of the opposite sex. It is immaterial whether "there is insufficient evidence," *ante* at 141, that plaintiffs in this case intended to engage in lewd and lascivious behavior. What is material is that it is the declared public policy of the state to discourage such behavior. Indeed, in enacting the criminal sexual conduct law, 1974 PA 266, the Legislature repealed several proscriptions involving sexual behavior, MCL 750.333, 750.336, and 750.339-750.342; MSA 28.565, 28.568, and 28.571-28.574, but did not repeal the prohibition against "lewd and lascivious" cohabitation.

Unmarried cohabitation is far more common today than it was when the term "marital status" first appeared in the forerunner of the present statute.[3] However, as observed by the Illinois Supreme Court in the context of rejecting the creation of legally enforceable property rights from nonmarital cohabitation:

> There are major public policy questions involved in determining whether, under what circumstances, and to what extent it is desirable to accord some type of legal status to claims arising from such relationships. Of substantially greater importance than the rights of the immediate parties

---

[3] The legislative analysis of the amendment to the Fair Housing Act of 1968, which added "marital status," observes that the housing problem was particularly acute for single-parent families with children. Senate Legislative Analysis, SB 13, September 22, 1975. Nothing in the analysis suggests a perception of need for housing for cohabitation.

is the impact of such recognition upon our society and the institution of marriage. [*Hewitt v Hewitt*, 77 Ill 2d 49, 58; 394 NE2d 1204 (1979).]

This is a paradigm of an issue of magnitude requiring legislative evaluation and resolution of competing factors, such as the legal status of unmarried cohabitation, the need for access to housing, and the free exercise of religion.[4] The Legislature can define marital status to include cohabitants. The Legislature has not done so, and we should not do so by judicial fiat. To ascribe to the Legislature an intention to burden a religious belief in the interest of protecting the conduct at issue[5] requires a suspension of disbelief that is beyond me.

For these reasons, I dissent.

WEAVER, J., concurred with BOYLE, J.

---

[4] Further, if the majority insists on addressing the free exercise of religion under the federal and state constitutions, it should first remand to allow the parties an opportunity to thoroughly argue the issues and the lower courts to address the issue. A remand on the constitutional issue seems particularly prudent, given the fact that, as of yet, this Court has declined to determine whether the Michigan Constitution affords greater protection to the free exercise of religion than that afforded by the First Amendment as interpreted by *Employment Div, Oregon Human Resources Dep't v Smith*, 494 US 872, 884; 110 S Ct 1595; 108 L Ed 2d 876 (1990). See *People v DeJonge (After Remand)*, 442 Mich 266, 279, n 27; 501 NW2d 127 (1993).

[5] The majority does not acknowledge the heavy presumption against repeal by implication. See *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 576; 548 NW2d 900 (1996). In *House Speaker v State Administrative Bd*, 441 Mich 547, 562; 495 NW2d 539 (1993), we stated that " '[r]epeals by implication are not favored and will not be indulged in if there is any other reasonable construction. The intent to repeal must very clearly appear, and courts will not hold to a repeal if they can find reasonable ground to hold the contrary.' " (Quoting *Attorney General ex rel Owen v Joyce*, 233 Mich 619, 621; 207 NW 863 (1926) [citations omitted].)

Weaver, J. (*dissenting*). I agree with the Court of Appeals and with the dissenting opinion of Justice Boyle.

I write separately to add that the majority misconstrues *People v Davis*, 294 Mich 499; 293 NW 734 (1940), and *People v June*, 294 Mich 681; 293 NW 906 (1940), claiming that those cases held "that the lewd and lascivious nature of the relationships had not been shown, although the prosecutor had provided proof that the men were cohabitating with each other's wives." *Ante*, p 141. The majority implies that those cases held that some conduct beyond cohabitating while sharing sexual relations is necessary evidence under the statute. However, these cases stand for nothing more than the corpus delicti of a charged offense may not be proved by extrajudicial, unsupported confessions. *Davis, supra,* p 502; *June, supra,* p 683. The only evidence in *Davis* and *June* unequivocally suggesting the defendants were having sexual relations out of wedlock and while living together was one of the defendant's confessions to a local newspaper reporter. The Court noted that the prosecution lacked evidence beyond "the 'confession' and a generous sprinkling of conjecture and imagination . . . ." *Davis, supra,* p 502. Specifically, the Court found lacking the following evidence necessary to the charge of lewd and lascivious association and cohabitation: "that the defendants had marital relations with each other, or that their conduct in public was anti-social in character." *Id.,* p 501.

Taylor, J., took no part in the decision of this case.