**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 29, 2002**

BRENT VEENSTRA,

    Plaintiff-Appellee,

v                                            **No. 117985**

WASHTENAW COUNTRY CLUB,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

Defendant Washtenaw Country Club declined to renew plaintiff's contract as the club's golf professional, following plaintiff's apparently notorious and public separation from his wife and cohabitation with another woman. The trial court summarily dismissed plaintiff's breach of contract and marital discrimination claims. The Court of Appeals upheld the dismissal of the contract claim, but held that, under our decision in *McCready v Hoffius*, 459 Mich 131;

586 NW2d 723 (1998)(*McCready II*), vacated in part 459 Mich 1235 (1999), discrimination on the basis of "unmarried cohabitation" violated the Civil Rights Act, MCL 37.2101 *et seq*.

We granted leave to appeal to consider whether the Civil Rights Act extends to discrimination against an employee on the basis of the employee's conduct, in this case adultery. We hold that an employee discharged solely because of conduct such as adultery is not protected by the Civil Rights Act; the statute prohibits an employer only from making decisions *because of* race, sex, marital status, and the other *protected statuses* enumerated in the statute.

In opposition to defendant's motion for summary disposition, plaintiff has arguably introduced some evidence that defendant considered his marital status in addition to his unprotected conduct. However, because the trial court did not explain why this evidence was insufficient to meet plaintiff's burden under MCR 2.116(G)(4), we vacate the holding of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was employed as defendant's golf professional

from 1991 through 1996.  His employment was based on a yearly contract.

Plaintiff's then current contract expired on its own terms in December 1996.  In January 1996, plaintiff, who was married, began having an adulterous affair with a married woman.  In April 1996, plaintiff moved out of his marital home.  A few weeks after leaving the marital home, plaintiff began cohabitating with his mistress and escorted her to club events.  All these activities became well known to members of the Washtenaw Country Club and were the subject of discussion.

In June 1996, board member Russo prepared and distributed a survey to the general membership of the country club asking members to evaluate certain key personnel, including plaintiff.  The surveys revealed that a number of members were dissatisfied with plaintiff's performance as the club golf professional.  Plaintiff received far more negative reviews than the other three personnel who were also the focus of the performance survey.

In September 1996, plaintiff's wife instituted formal divorce proceedings.  Two months later, defendant informed plaintiff of its decision not to renew his yearly employment contract.  The employment contract expired at the end of 1996. Plaintiff's divorce from his wife became final in May 1997.

3

In December 1997, plaintiff filed suit, alleging marital status discrimination and breach of contract. Regarding the discrimination claim, plaintiff alleged that his termination "was motivated in part if not entirely because of his status as a divorced person."

The trial court granted summary disposition for defendant on both counts of the complaint pursuant to MCR 2.116(C)(10). Relying on *McCready v Hoffius*, 222 Mich App 210; 564 NW2d 493 (1997)(*McCready I*), the trial court ruled that cohabitation was not a protected status under the Civil Rights Act. Viewing the evidence in a light most favorable to plaintiff, the trial court concluded that "if there was discrimination against plaintiff, it was not based on his pending divorce but on his cohabitation with his mistress." In granting summary disposition to defendant, the trial court did not address an affidavit plaintiff submitted that arguably supported a claim that his pending divorce was a factor in the decision not to renew his contract.

On appeal, the Court of Appeals affirmed in part and reversed in part.[1] The panel affirmed the granting of summary disposition on the breach of contract claim.[2] However, the

---

[1] Unpublished opinion per curiam, issued October 6, 2000 (Docket No. 216907).

[2] Plaintiff did not appeal the Court of Appeals ruling on the breach of contract claim, so that issue is not before us.

panel reversed the order granting summary disposition regarding the marital status discrimination claim. *McCready I*, relied on by the trial court in granting summary disposition for defendant, had been reversed by this Court in *McCready II*. Citing the Court's decision in *McCready II*, the Court of Appeals concluded that plaintiff had a valid claim for marital discrimination "to the extent that plaintiff establishes discrimination on the basis of his unmarried cohabitation . . . ." In concluding that plaintiff presented direct evidence sufficient to create a genuine issue of material fact, the Court of Appeals cited the affidavit of defendant's outside operations manager who stated that three of the board's eight members specifically expressed their disapproval of plaintiff's divorce, stated that the situation was "disgusting," referred to plaintiff as a "slut," and stated that they "had to get rid of him."

Defendant sought leave to appeal, which was granted. 464 Mich 874 (2001).

## II. STANDARD OF REVIEW

The decision to grant or deny summary disposition is a question of law that is reviewed de novo. *Van v Zahorik*, 460 Mich 320; 597 NW2d 15 (1999). This case also presents the issue whether plaintiff's adulterous behavior is protected under the Civil Rights Act. The interpretation and

5

application of a statutory provision is a question of law that is reviewed de novo by this Court. *People v Webb,* 458 Mich 265, 274; 580 NW2d 884 (1998).

### III. PRINCIPLES OF STATUTORY CONSTRUCTION

When interpreting statutory language, our obligation is to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. *Wickens v Oakwood Healthcare System*, 465 Mich 53; 631 NW2d 686 (2001). When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case. *Turner v Auto Club Ins Ass'n*, 448 Mich 22; 528 NW2d 681 (1995). In construing a statute, the words used by the Legislature must be given their common, ordinary meaning. MCL 8.3a.

### IV. ANALYSIS

### A. THE STATUTE

Plaintiff's claim for marital status employment discrimination is premised upon MCL 37.2202(1), which provides in relevant part:

> An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of

6

employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

While the term "marital status" is not defined in the statute, this Court has historically defined the term as "*whether* a person is married." *Miller v C A Muer Corp*, 420 Mich 355, 363; 362 NW2d 650 (1984); *Whirlpool Corp v Civil Rights Comm*, 425 Mich 527, 530; 390 NW2d 625 (1986); *McCready II, supra* at 137.

The clear, unambiguous language of the statute protects status, not conduct. As a result, if an employer takes adverse action against an employee for conduct, without regard to marital status, the Civil Rights Act simply provides no redress. Thus, a discrimination claim premised merely on an employer's consideration of an employee's adultery would provide no basis for recovery under the act.[3]

### B. THE APPLICABILITY OF *MCCREADY II*

In *McCready II*, defendants, who owned residential rental property, refused to rent their property to unmarried couples.

---

[3] We note that the adultery statute applies equally to married and unmarried individuals. MCL 750.29 defines adultery as "sexual intercourse of 2 persons, *either of whom* is married to a third person." (Emphasis added.) Thus, because plaintiff's mistress was married, plaintiff would have been engaging in adultery even if he had been unmarried. This language alone demonstrates the irrelevancy in this case of the dissent's observation, slip op at 3, that the Civil Rights Act protects persons from discrimination "on the basis of acts found immoral solely because of one's status."

In doing so, defendants stated "that the units were available only to married couples" and that they usually "did not rent to unmarried couples." 459 Mich 134. Plaintiffs, two unmarried couples who intended to cohabit, brought suit after being denied the opportunity to rent the property. Defendants maintained that any discrimination was premised upon "their perception of plaintiffs' conduct" rather than the plaintiffs' marital status. *Id* at 138.

The issue to be resolved in *McCready II* was whether a claim for marital status discrimination could be stated where the claim was premised on defendant's rejection of plaintiffs because of their unmarried cohabitation. The statutory provision at issue in *McCready II*, MCL 37.2502(1), states in pertinent part:

> A person engaging in a real estate transaction, or a real estate broker or salesman, shall not on the basis of religion, race, color, national origin, age, sex, familial status, or *marital status of a person or a person residing with that person:*
>
> (a) Refuse to engage in a real estate transaction with a person. [Emphasis added.]

In determining that the plaintiff had stated a claim for marital status discrimination, this Court attempted to distinguish status from conduct, concluding that "[p]laintiffs' marital status, and not their conduct in living together, is the root of the defendants' objection to renting

8

the apartment to the plaintiffs." *Id.* at 140.  We further noted that the case was "complicated" by a statute forbidding lewd and lascivious cohabitation by unmarried couples, MCL 750.335.  *Id.*, 136.  However, the opinion held that there was "insufficient evidence that the plaintiffs intended to engage in lewd and lascivious behavior." *Id.*, 141.

In reversing the trial court's grant of summary disposition for defendant in this case, the Court of Appeals applied *McCready II* and concluded that plaintiff had a valid claim for marital discrimination "to the extent that plaintiff establishes discrimination on the basis of his unmarried cohabitation . . . ." Slip op at 4.  However, *McCready* should not be read so expansively as to create a right to cohabit under our Civil Rights Act.  Properly read, the plaintiffs in *McCready II* submitted sufficient direct evidence of marital status discrimination to survive defendant's motion for summary disposition.

While stated above, we take this opportunity to unequivocally reiterate that the unambiguous language of the Civil Rights Act protects *only* the consideration of a person's marital status.  Adverse action against an individual for conduct, without regard to marital status, provides no basis for recourse under the act.  It is irrelevant that the conduct

at issue does or does not have criminal consequences.[4]

In *McCready*, direct evidence was presented that the defendants considered the marital status of the plaintiffs in refusing to engage in the desired real estate transaction. Our Civil Rights Act requires no more.[5]

### C. DEFENDANT'S MOTION FOR SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)

Defendant brought a motion for summary disposition pursuant to MCR 2.116(C)(10). A motion under this section tests the factual sufficiency of the complaint. The movant must specifically identify issues to which it believes no genuine issue as to any material fact exists. MCR 2.116(G)(4). In opposition to the motion, the nonmoving party may not rest upon mere allegations or denials, but must proffer evidence of specific facts showing that there is a genuine issue for trial. *Id.; Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999). Evidence offered in support of or in opposition to the motion can be considered only to the

---

[4] Although the dissent takes pains to concur in this proposition, slip op at 6, it is important to understand that our opinion asserts this *only* because we believe that the Act protects status and not conduct.

[5] Contrary to the dissent, slip op at 3, we do not suggest that *McCready II* is about a "right to cohabit." It is the dissent that appears to interpret it in this manner. Rather, the majority views *McCready II* as a case focused upon marital status discrimination, one of the express categories of statutory protection under the Civil Rights Act.

extent that it is substantively admissible.  MCR 2.116(G)(6); *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

In evaluating a motion for summary disposition brought under this subsection, a trial court is required to consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion.  Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4).  *Quinto v Cross & Peters Co,* 451 Mich 358; 547 NW2d 314 (1996).

In the instant case, defendant's motion for summary disposition maintains that its refusal to renew plaintiff's contract did not relate to his marital status.  In response, plaintiff offered the affidavit of defendant's outside operations manager, Patrick Godfrey.  Mr. Godfrey averred that, "[o]n several occasions," he overheard three board members "specifically express their disapproval" of plaintiff's divorce, state that the situation was "disgusting," refer to plaintiff as a "slut," and state that they "had to get rid of him."

Plaintiff argues that sufficient evidence was presented that, at a minimum, defendant harbored mixed motives when it discharged him.  Evidence of mixed motives, when one motive is

11

impermissible under the Civil Rights Act, is sufficient to withstand summary disposition. In such a case, the impermissible factor must be a determining factor. See *Matras v Amoco Oil Co*, 424 Mich 675, 682-683; 385 NW2d 586 (1986). When the Court of Appeals evaluated plaintiff's claim as one related to his pending divorce and adultery, it failed to evaluate whether the pending divorce was a determining factor.

Likewise, the trial court did not consider the affidavit suggesting that the defendant may have acted on an impermissible motive. In granting defendant's motion, the trial court merely concluded that any discrimination was motivated by plaintiff's cohabitation with his mistress and did not specifically address the adequacy of the affidavit. There is little evidence in the record indicating that the trial court considered the evidence contained in the affidavit as required by MCR 2.116(G)(5). We therefore remand this case to the trial court. On remand, the trial court is to consider defendant's motion for summary disposition, and plaintiff's response thereto, in conformance with MCR 2.116(G)(4)-(6).[6]

### D. RESPONSE TO THE DISSENT

The dissent consciously and wilfully chooses to ignore

---

[6] In so remanding, we form no opinion, implicitly or explicitly, regarding whether plaintiff has submitted admissible evidence of specific facts sufficient to raise a genuine issue of material fact.

12

the holding that has been stated several times throughout this opinion—that adverse action against an individual for conduct, *without regard to a protected status*, provides no basis for recourse under the Civil Rights Act. This construction is required because the act provides that it is unlawful to discriminate "*because of*" one of the enumerated protected characteristics.[7] Where no direct evidence of discrimination based on one of the protected characteristics exists, the burden is on the plaintiff to establish a link between the conduct and a protected status. Absent evidence that the reason offered for the alleged discriminatory action is merely pretextual, the claim fails. *Hazle v Ford Motor Co*, 464 Mich 456; 628 NW2d 515 (2001). However, where there *is* sufficient evidence of pretext, the claim survives.

The dissent incorrectly maintains that our holding creates a "rule per se excluding conduct . . . ." Slip op at 2. However, as we have made clear, conduct may be the subject of protection under the Civil Rights Act if such conduct is mere pretext for action based on consideration of

---

[7] The distinction that this opinion draws between conduct and status, and that the dissent characterizes as "artificial," slip op at 8, is a direct function of the words "because of." While there are other statutes that limit the scope of private and public decision making, the Civil Rights Act merely prohibits actions that are taken *with regard to* certain types of statuses, "*because of*" these characteristics. It does not prohibit actions that are legitimately taken for any other reason.

a protected status category.[8]  In fact, the rule we articulate is undeniably consistent with the language of the statute, which protects enumerated characteristics, *not* conduct.  This rule is also consistent with our jurisprudence under the Civil Rights Act.  Like any other prima facie case of discrimination, a claim for marital status discrimination survives if a plaintiff can establish that adverse action was taken because of a protected status *notwithstanding* that conduct is asserted as the basis for the challenged action.  However, in this case, plaintiff has not needed to posture his discrimination action as a prima facie case predicated within the *McDonnell Douglas*[9] framework.  Rather, this case is premised upon an allegation of direct evidence of marital status animus.

Instead of simply adhering to the plain language of the

---

[8] Contrary to the suggestions of the dissent, slip op at 7, we impose no requirement that a plaintiff must offer statements on the part of a defendant expressly communicating a prejudice toward persons of a protected status.  Rather, "an invidious purpose may often be inferred from the totality of relevant facts," *Washington v Davis*, 426 US 229, 242; 96 S Ct 2040; 48 L Ed 2d 597 (1976).  Such an assessment "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Hts v Metro Housing Dev Corp*, 429 US 252, 266; 97 S Ct 555; 50 L Ed 2d 450 (1977).

[9] *McDonnell Douglas Corp v Green*, 411 US 792, 93 S Ct 1817, 36 L Ed 2d 668 (1973). The *McDonnell Douglas* approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination.

statute and applying the analytical frameworks that currently exist in civil rights jurisprudence, the dissent prefers to engage in what it considers a more "thoughtful analysis" of marital status discrimination claims—an analysis that ponders the "essential conception[s] of human dignity" as well as whether adverse actions are "motivated by moral judgments about a person's conduct . . . ." Slip op at 6.  To say the least, these philosophical musings are not found within the canons of statutory construction.  Accordingly, we simply decline to circumvent the language of the statute in favor of the sociological and moral inquiry favored by the dissent.[10]

## V. CONCLUSION

The clear language of the Civil Rights Act prevents only consideration of an employee's protected status—here, marital status.  We further hold that an employee's conduct or misconduct is not a protected status under the employment provisions of the act, and our opinion in *McCready II* should

---

[10] Needless to say, we do not agree with the dissent's characterization of this opinion as less than "honest," slip op at 5, or as "shallow," slip op at 7, because it does not reach the results preferred by the dissent.  In this same regard, we would view the dissent as far more straightforward if it did not pay homage to a "societal interest in []fidelity," slip op at 5, at the same time that it concludes—in our judgment, without legislative warrant—that there is civil rights protection for adulterous conduct.

15

not be read otherwise.  Because there is no indication that the trial court considered plaintiff's evidence in opposition to the motion for summary disposition as required by the court rules, we vacate the holding of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

CORRIGAN, C.J., and TAYLOR and MARKMAN, JJ., concurred with YOUNG, J.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

BRENT VEENSTRA,

    Plaintiff-Appellee,

v                                      No. 117985

WASHTENAW COUNTRY CLUB,

    Defendant-Appellant.

_____

WEAVER, J. (*concurring*).

    I join all but part IV(D) of the opinion.

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

BRENT VEENSTRA,

    Plaintiff-Appellee,

v                                                                      No. 117985

WASHTENAW COUNTRY CLUB,

    Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

The majority holds that the Civil Rights Act, MCL 37.2202(1) *et seq.*, prohibits employment discrimination only on the basis of status and not conduct. This conclusion results from an overly simplistic analysis of the statute and unnecessarily limits this Court's holding in *McCready v Hoffius*, 459 Mich 131; 586 NW2d 723 (1998) (*McCready II*) vacated in part 459 Mich 1235 (1999). Conduct and status are often inextricably linked, and I find unworkable any rule per se attempting to assert otherwise. Therefore, I must respectfully dissent.

Although the term "status" is used in identifying a prohibited ground for discrimination, i.e, "marital status," status and conduct are concepts that cannot always be easily distinguished. This is true because much of what the Civil Rights Act prohibits is discrimination on the basis of assumptions about conduct that stem from, and are often a manifestation of, one's status. Even so, I agree that actual conduct may be relevant in employment and housing considerations, and certain conduct need not be tolerated simply because a connection to status can be made. But while conduct is not *always* protected by the act, certain conduct can be directly linked to status in such a way that adverse action based on conduct will result in status-based discrimination. A rule per se excluding conduct from the protections of the act creates an artificial distinction and narrows the breadth of the remedial act.

Though such adverse action is prohibited by *McCready II,* the majority now recasts and diminishes its holding. In *McCready II,* this Court held that a lessor could not refuse to lease an apartment to an unmarried couple because plaintiffs' marital status was "the root of the defendant's objection to renting [the apartment]" and expressly rejected claims that conduct, not status, motivated the prohibited action. *Id.* at 140. Instead, this Court adopted the Alaska Supreme Court's

2

rationale in *Swanner v Anchorage Equal Rights Comm*, 874 P2d 274, 278, n 4 (Alas, 1994), which held that a landlord "'cannot reasonably claim that he does not rent or show property to cohabiting couples based on their conduct (living together outside of marriage) and not their marital status when their marital status (unmarried) is what makes their conduct immoral in [the landlord's] opinion.'" *McCready II* at 139. Similarly, for the purpose of resolving this issue of law, we have assumed the defendant in this case terminated the plaintiff's employment because it felt plaintiff's behavior was immoral, an act condemned only because he was married.[1] Thus, *McCready II* should control; but the majority now recharacterizes *McCready II* and suggests the *McCready II* defendants could have prevailed had they proven the plaintiffs *would*, in fact, have engaged in sexual intercourse while cohabitating. *McCready II* is not about "a right to cohabit" as the majority suggests, but, instead, makes clear that the Civil Rights Act guarantees the right to be free from

---

[1] The majority asserts that "[a]dverse action against an individual for conduct, without regard to marital status, provides no basis for recourse under the act." Ante at 11. As previously stated, the distinction between status and conduct is not so clear that it should be enmeshed in discrimination jurisprudence. Moreover, even if adopted here, the circumstances indicate the action taken by the defendant was *not* "without regard to marital status." But for his status, I suspect little attention would have been paid to his conduct.

3

discrimination on the basis of acts found immoral solely because of one's status.

The majority might respond that employers *should* be able to make decisions as a result of the type of conduct at issue here, especially where it has an effect on the employee's credibility with clients who, assertedly, are known for their deference to etiquette standards and social mores. Where there is an employment at will relationship, some might argue that termination must be an option for employers. However, the Legislature arguably prohibited such actions with the passage of the Civil Rights Act. The decision to terminate plaintiff appears to have been based on the defendant's disapproval of plaintiff's conduct, conduct that was scorned *only* because of plaintiff's marital status.

I concede that few in the Legislature likely anticipated that employees would be protected from discrimination resulting from what some would claim was socially justified condemnation for infidelity when drafting the Civil Rights Act. However, the statute as written does not create an exception for the types of bias that most feel is justified, and inserting a "status only" element that results in the automatic dismissal of claims where conduct and status are linked is not the proper manner in which to determine the legislative intent.

4

What might be more useful is a thoughtful analysis of discrimination claims in light of the social and historical context that prompted the Legislature to pass the Civil Rights Act and to protect people from discrimination on the basis of marital status. Does the different treatment closely relate to a personal characteristic of the complainant? Does the distinction serve to deny a person of the essential conception of human dignity? Does discrimination resulting from a married person's infidelity exacerbate the prejudices the act attempts to curb? Are discriminatory acts motivated by moral judgments about a person's conduct permissible when the motivation is directly tied to a protected status? The answers to these questions are not as clear, but I suspect a discussion of this nature would result in a more honest attempt to analyze the issues the majority frames as mechanical, rote rules of law. Such an inquiry would also diminish the risk that artificial distinctions could be used opportunistically to avoid the mandate of the Civil Rights Act.

At the end of the day the plaintiff may not be protected by the act, but *not* because he was not subject to status-based discrimination. Rather, he may be outside the protections of the act because the Legislature did not intend to protect a societal interest in infidelity. The majority claims such an

5

analysis would be Solomonic, but I think it is the only reasonable position because it would dispel the illusion that the issue is clear and devoid of hidden value assumptions. The majority claims such considerations are unnecessary because the plaintiff would be guilty of adultery under the criminal code whether he was married or single-he had sex with a married woman and his conduct would fall under the purview of the statutory prohibition regardless of his marital status. The majority concludes that this particular type of conduct-based discrimination has no connection to plaintiff's marital status. I find this distinction dangerous and illusory. As the majority correctly notes, "[i]t is irrelevant that the conduct at issue does or does not have criminal consequences." Slip op, p 11. Moreover, the societal condemnation surrounding infidelity is based solely on expectations and presumptions associated with marriage and marital status. If the defendant had asserted that it reprimands and terminates employees on the basis of their promiscuous behavior, the act arguably would not protect such conduct. The act does not prohibit discrimination on the basis of lax sexual mores. However, that is not what the defendant claims, nor what this Court holds today. The majority states adultery is not protected by the act on the basis of a status/conduct distinction that creates an impermissible and arguably

6

complete defense to direct evidence of status-based discrimination when disfavored conduct is shown.

*McCready II* did not attempt to make such shallow distinctions, and to claim now that it stands only for the proposition that an unmarried couple who is denied housing can only succeed if they show marital status discrimination without regard to their intended conduct-cohabitation-makes no sense to me. A defendant need only show the disfavored action was based on conduct to escape liability. If the majority view prevails, I cannot envision how an attorney could bring a discrimination claim on behalf of an unmarried couple denied housing on the basis of their marital status. Only if a landlord happened to expressly state that her refusal to rent was based on-and only on-their marital status would plaintiffs prevail. The act is not meant to prohibit adverse action only when randomly made prejudicial comments are aired.

The majority correctly states that the act requires only proof of status-based discrimination. However, how can such a claim be made if this Court prohibits plaintiffs from illustrating the manner in which status-based discrimination is given life, i.e., through conduct-based adverse action? I do not assert that all conduct is protected, but only that this doctrine is unworkable to the degree that it excludes claims where adverse action can be tied to conduct.

There is no principled reason to import a status/conduct distinction where it fails to properly and fully address the discriminatory action.  I cannot agree that the Legislature intended to permit a "conceptual out" or "conduct defense" whenever this Court finds the discrimination morally permissible.  Further, the majority opinion could be characterized as the first step in the creation of a doctrine that eviscerates the prohibition of status-based discrimination, picking up where *McCready I* left off.  Contrary to the assertions made by the majority, the holding in *McCready II* would be considerably narrowed by the majority here.  A bright-line rule excluding conduct from the protections of the act creates an artificial distinction and narrows the breadth of the remedial act.

Adoption of an artificial distinction between status and conduct in this case should not eviscerate the principles in *McCready II.*  Such a meager interpretation cannot logically be made on the basis of the text of the statute and is inconsistent with the Civil Rights Act.  The rationale provided by the majority inappropriately narrows our understanding of discrimination.  Because the text of the Civil Rights Act is not exclusively limited to the prohibition of status discrimination where no conduct discrimination is

present, and because *McCready II*'s holding is not so narrow, I would affirm the opinion of the Court of Appeals.

KELLY, J., concurred with CAVANAGH, J.