Cavanagh, J.
(dissenting). The majority holds that the Civil Rights Act, MCL 37.2202(1) et seq., prohibits employment discrimination only on the basis of status and not conduct. This conclusion results from an overly simplistic analysis of the statute and unnecessarily limits this Court’s holding in McCready v Hoffius, 459 Mich 131; 586 NW2d 723 (1998) (McCready II) vacated in part 459 Mich 1235 (1999). Conduct and status are often inextricably linked, and I find unworkable any rule per se attempting to assert otherwise. Therefore, I must respectfully dissent.
Although the term “status” is used in identifying a prohibited ground for discrimination, i.e, “marital status,” status and conduct are concepts that cannot always be easily distinguished. This is true because much of what the Civil Rights Act prohibits is discrimination on the basis of assumptions about conduct that stem from, and are often a manifestation of, one’s status. Even so, I agree that actual conduct may be relevant in employment and housing considera *169 tions, and certain conduct need not be tolerated simply because a connection to status can be made. But while conduct is not always protected by the act, certain conduct can be directly linked to status in such a way that adverse action based on conduct will result in status-based discrimination. A rule per se excluding conduct from the protections of the act creates an artificial distinction and narrows the breadth of the remedial act.
Though such adverse action is prohibited by McCready II, the majority now recasts and diminishes its holding. In McCready II, this Court held that a lessor could not refuse to lease an apartment to an unmarried couple because plaintiffs’ marital status was “the root of the defendant’s objection to renting [the apartment]” and expressly rejected claims that conduct, not status, motivated the prohibited action. Id. at 140. Instead, this Court adopted the Alaska Supreme Court’s rationale in Swanner v Anchorage Equal Rights Comm, 874 P2d 274, 278, n 4 (Alas, 1994), which held that a landlord “ ‘cannot reasonably claim that he does not rent or show property to cohabitating couples based on their conduct (living together outside of marriage) and not their marital status when their marital status (unmarried) is what makes their conduct immoral in [the landlord’s] opinion.’ ” McCready II at 139. Similarly, for the purpose of resolving this issue of law, we have assumed the defendant in this case terminated the plaintiff’s employment because it felt plaintiff’s behavior was immoral, an act condemned only because he was married.[1] Thus, McCready II should control; but the *170 majority now recharacterizes McCready II and suggests the McCready II defendants could have prevailed had they proven the plaintiffs would, in fact, have engaged in sexual intercourse while cohabitating. McCready II is not about “a right to cohabit” as the majority suggests, but, instead, makes clear that the Civil Rights Act guarantees the right to be free from discrimination on the basis of acts found immoral solely because of one’s status.
The majority might respond that employers should be able to make decisions as a result of the type of conduct at issue here, especially where it has an effect on the employee’s credibility with clients who, assertedly, are known for their deference to etiquette standards and social mores. Where there is an employment at will relationship, some might argue that termination must be an option for employers. However, the Legislature arguably prohibited such actions with the passage of the Civil Rights Act. The decision to terminate plaintiff appears to have been based on the defendant’s disapproval of plaintiff’s conduct, conduct that was scorned only because of plaintiff’s marital status.
I concede that few in the Legislature likely anticipated that employees would be protected from discrimination resulting from what some would claim was socially justified condemnation for infidelity when drafting the Civil Rights Act. However, the statute as written does not create an exception for the *171 types of bias that most feel is justified, and inserting a “status only” element that results in the automatic dismissal of claims where conduct and status are linked is not the proper manner in which to determine the legislative intent.
What might be more useful is a thoughtful analysis of discrimination claims in light of the social and historical context that prompted the Legislature to pass the Civil Rights Act and to protect people from discrimination on the basis of marital status. Does the different treatment closely relate to a personal characteristic of the complainant? Does the distinction serve to deny a person of the essential conception of human dignity? Does discrimination resulting from a married person’s infidelity exacerbate the prejudices the act attempts to curb? Are discriminatory acts motivated by moral judgments about a person’s conduct permissible when the motivation is directly tied to a protected status? The answers to these questions are not as clear, but I suspect a discussion of this nature would result in a more honest attempt to analyze the issues the majority frames as mechanical, rote rules of law. Such an inquiry would also diminish the risk that artificial distinctions could be used opportunistically to avoid the mandate of the Civil Rights Act.
At the end of the day the plaintiff may not be protected by the act, but not because he was not subject to status-based discrimination. Rather, he may be outside the protections of the act because the Legislature did not intend to protect a societal interest in infidelity. The majority claims such an analysis would be Solomonic, but I think it is the only reasonable position because it would dispel the illusion that the issue is clear and devoid of hidden value assump *172 tions. The majority claims such considerations are unnecessary because the plaintiff would be guilty of adultery under the criminal code whether he was married or single—he had sex with a married woman and his conduct would fall under the purview of the statutory prohibition regardless of his marital status. The majority concludes that this particular type of conduct-based discrimination has no connection to plaintiff’s marital status. I find this distinction dangerous and illusory. As the majority correctly notes, “[i]t is irrelevant that the conduct at issue does or does not have criminal consequences.” Ante at 163. Moreover, the societal condemnation surrounding infidelity is based solely on expectations and presumptions associated with marriage and marital status. If the defendant had asserted that it reprimands and terminates employees on the basis of their promiscuous behavior, the act arguably would not protect such conduct. The act does not prohibit discrimination on the basis of lax sexual mores. However, that is not what the defendant claims, nor what this Court holds today. The majority states adultery is not protected by the act on the basis of a status/conduct distinction that creates an impermissible and arguably complete defense to direct evidence of status-based discrimination when disfavored conduct is shown.
McCready II did not attempt to make such shallow distinctions, and to claim now that it stands only for the proposition that an unmarried couple who is denied housing can only succeed if they show marital status discrimination without regard to their intended conduct—cohabitation—makes no sense to me. A defendant need only show the disfavored action was based on conduct to escape liability. If the majority view prevails, I cannot envision how an attorney *173 could bring a discrimination claim on behalf of an unmarried couple denied housing on the basis of their marital status. Only if a landlord happened to expressly state that her refusal to rent was based on-and only on-their marital status would plaintiffs prevail. The act is not meant to prohibit adverse action only when randomly made prejudicial comments are aired.
The majority correctly states that the act requires only proof of status-based discrimination. However, how can such a claim be made if this Court prohibits plaintiffs from illustrating the manner in which status-based discrimination is given life, i.e., through conduct-based adverse action? I do not assert that all conduct is protected, but only that this doctrine is unworkable to the degree that it excludes claims where adverse action can be tied to conduct.
There is no principled reason to import a status/conduct distinction where it fails to properly and fully address the discriminatory action. I cannot agree that the Legislature intended to permit a “conceptual out” or “conduct defense” whenever this Court finds the discrimination morally permissible. Further, the majority opinion could be characterized as the first step in the creation of a doctrine that eviscerates the prohibition of status-based discrimination, picking up where McCready I left off. Contrary to the assertions made by the majority, the holding in McCready II would be considerably narrowed by the majority here. A bright-line rule excluding conduct from the protections of the act creates an artificial distinction and narrows the breadth of the remedial act.
Adoption of an artificial distinction between status and conduct in this case should not eviscerate the principles in McCready II. Such a meager interpreta *174 tion cannot logically be made on the basis of the text of the statute and is inconsistent with the Civil Rights Act. The rationale provided by the majority inappropriately narrows our understanding of discrimination. Because the text of the Civil Rights Act is not exclusively limited to the prohibition of status discrimination where no conduct discrimination is present, and because McCready IFs holding is not so narrow, I would affirm the opinion of the Court of Appeals.
Kelly, J., concurred with Cavanagh, J.

 The majority asserts that “[a]dverse action against an individual for conduct, without regard to marital status, provides no basis for recourse *170 under the act.” Ante at 163. As previously stated, the distinction between status and conduct is not so clear that it should be enmeshed in discrimination jurisprudence. Moreover, even if adopted here, the circumstances indicate the action taken by the defendant was not “without regard to marital status.” But for his status, I suspect little attention would have been paid to his conduct.