Young, J.
Defendant Washtenaw Country Club declined to renew plaintiffs contract as the club’s golf professional, following plaintiff’s apparently notorious and public separation from his wife and cohabitation with another woman. The trial court summarily dismissed plaintiff’s breach of contract and marital discrimination claims. The Court of Appeals upheld the dismissal of the contract claim, but held that, under our decision in McCready v Hoffius, 459 Mich 131; 586 NW2d 723 (1998) (McCready II), vacated in part 459 Mich 1235 (1999), discrimination on the basis of “unmarried cohabitation” violated the Civil Rights Act, MCL 37.2101 et seq.
We granted leave to appeal to consider whether the Civil Rights Act extends to discrimination against an employee on the basis of the employee’s conduct, in this case adultery. We hold that an employee discharged solely because of conduct such as adultery is not protected by the Civil Rights Act; the statute prohibits an employer only from making decisions because of race, sex, marital status, and the other protected statuses enumerated in the statute.
In opposition to defendant’s motion for summary disposition, plaintiff has arguably introduced some *157 evidence that defendant considered his marital status in addition to his unprotected conduct. However, because the trial court did not explain why this evidence was insufficient to meet plaintiffs burden under MCR 2.116(G)(4), we vacate the holding of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
Plaintiff was employed as defendant’s golf professional from 1991 through 1996. His employment was based on a yearly contract.
Plaintiff’s then current contract expired on its own terms in December 1996. In January 1996, plaintiff, who was married, began having an adulterous affair with a married woman. In April 1996, plaintiff moved out of his marital home. A few weeks after leaving the marital home, plaintiff began cohabitating with his mistress and escorted her to club events. All these activities became well known to members of the Washtenaw Country Club and were the subject of discussion.
In June 1996, board member Russo prepared and distributed a survey to the general membership of the country club asking members to evaluate certain key personnel, including plaintiff. The surveys revealed that a number of members were dissatisfied with plaintiff’s performance as the club golf professional. Plaintiff received far more negative reviews than the other three personnel who were also the focus of the performance survey.
In September 1996, plaintiff’s wife instituted formal divorce proceedings. Two months later, defendant *158 informed plaintiff of its decision not to renew his yearly employment contract. The employment contract expired at the end of 1996. Plaintiff’s divorce from his wife became final in May 1997.
In December 1997, plaintiff filed suit, alleging marital status discrimination and breach of contract. Regarding the discrimination claim, plaintiff alleged that his termination “was motivated in part if not entirely because of his status as a divorced person.”
The trial court granted summary disposition for defendant on both counts of the complaint pursuant to MCR 2.116(C)(10). Relying on McCready v Hoffius, 222 Mich App 210; 564 NW2d 493 (1997) (McCready I), the trial court ruled that cohabitation was not a protected status under the Civil Rights Act. Viewing the evidence in a light most favorable to plaintiff, the trial court concluded that “if there was discrimination against plaintiff, it was not based on his pending divorce but on his cohabitation with his mistress.” In granting summary disposition to defendant, the trial court did not address an affidavit plaintiff submitted that arguably supported a claim that his pending divorce was a factor in the decision not to renew his contract.
On appeal, the Court of Appeals affirmed in part and reversed in part.[1] The panel affirmed the granting of summary disposition on the breach of contract claim.[2] However, the panel reversed the order granting summary disposition regarding the marital status discrimination claim. McCready /, relied on by the *159 trial court in granting summary disposition for defendant, had been reversed by this Court in McCready II. Citing the Court’s decision in McCready II, the Court of Appeals concluded that plaintiff had a valid claim for marital discrimination “to the extent that plaintiff establishes discrimination on the basis of his unmarried cohabitation . In concluding that plaintiff presented direct evidence sufficient to create a genuine issue of material fact, the Court of Appeals cited the affidavit of defendant’s outside operations manager who stated that three of the board’s eight members specifically expressed their disapproval of plaintiff’s divorce, stated that the situation was “disgusting,” referred to plaintiff as a “slut,” and stated that they “had to get rid of him.”
Defendant sought leave to appeal, which was granted. 464 Mich 874 (2001).
II. STANDARD OF REVIEW
The decision to grant or deny summary disposition is a question of law that is reviewed de novo. Van v Zahorik, 460 Mich 320; 597 NW2d 15 (1999). This case also presents the issue whether plaintiff’s adulterous behavior is protected under the Civil Rights Act. The interpretation and application of a statutory provision is a question of law that is reviewed de novo by this Court. People v Webb, 458 Mich 265, 274; 580 NW2d 884 (1998).
III. PRINCIPLES OF STATUTORY CONSTRUCTION
When interpreting statutory language, our obligation is to discern the legislative intent that may reasonably be inferred from the words expressed in the *160 statute. Wickens v Oakwood Healthcare System, 465 Mich 53; 631 NW2d 686 (2001). When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case. Turner v Auto Club Ins Ass’n, 448 Mich 22; 528 NW2d 681 (1995). In construing a statute, the words used by the Legislature must be given their common, ordinary meaning. MCL 8.3a.
IV. ANALYSIS
A. THE STATUTE
Plaintiff’s claim for marital status employment discrimination is premised upon MCL 37.2202(1), which provides in relevant part:
An employer shall not do any of the following:
(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
While the term “marital status” is not defined in the statute, this Court has historically defined the term as “whether a person is married.” Miller v C A Muer Corp, 420 Mich 355, 363; 362 NW2d 650 (1984); Whirlpool Corp v Civil Rights Comm, 425 Mich 527, 530; 390 NW2d 625 (1986); McCready II, supra at 137.
The clear, unambiguous language of the statute protects status, not conduct. As a result, if an employer takes adverse action against an employee for conduct, without regard to marital status, the Civil *161 Rights Act simply provides no redress. Thus, a discrimination claim premised merely on an employer’s consideration of an employee’s adultery would provide no basis for recovery under the act.[3]
B. THE APPLICABILITY OF MCCREADY II
In McCready II, defendants, who owned residential rental property, refused to rent their property to unmarried couples. In doing so, defendants stated “that the units were available only to married couples” and that they usually “did not rent to unmarried couples.” 459 Mich 134. Plaintiffs, two unmarried couples who intended to cohabit, brought suit after being denied the opportunity to rent the property. Defendants maintained that any discrimination was premised upon “their perception of plaintiffs’ conduct” rather than the plaintiffs’ marital status. Id at 138.
The issue to be resolved in McCready II was whether a claim for marital status discrimination could be stated where the claim was premised on defendant’s rejection of plaintiffs because of their unmarried cohabitation. The statutory provision at issue in McCready II, MCL 37.2502(1), states in pertinent part:
*162 A person engaging in a real estate transaction, or a real estate broker or salesman, shall not on the basis of religion, race, color, national origin, age, sex, familial status, or marital status of a person or a person residing with that person:
(a) Refuse to engage in a real estate transaction with a person. [Emphasis added.]
In determining that the plaintiff had stated a claim for marital status discrimination, this Court attempted to distinguish status from conduct, concluding that “[plaintiffs’ marital status, and not their conduct in living together, is the root of the defendants’ objection to renting the apartment to the plaintiffs.” Id. at 140. We further noted that the case was “complicated” by a statute forbidding lewd and lascivious cohabitation by unmarried couples, MCL 750.335. Id., 136. However, the opinion held that there was “insufficient evidence that the plaintiffs intended to engage in lewd and lascivious behavior.” Id., 141.
In reversing the trial court’s grant of summary disposition for defendant in this case, the Court of Appeals applied McCready II and concluded that plaintiff had a valid claim for marital discrimination “to the extent that plaintiff establishes discrimination on the basis of his unmarried cohabitation . . . .” Slip op at 4. However, McCready should not be read so expansively as to create a right to cohabit under our Civil Rights Act. Properly read, the plaintiffs in McCready II submitted sufficient direct evidence of marital status discrimination to survive defendant’s motion for summary disposition.
While stated above, we take this opportunity to unequivocally reiterate that the unambiguous language of the Civil Rights Act protects only the consid *163 eration of a person’s marital status. Adverse action against an individual for conduct, without regard to marital status, provides no basis for recourse under the act. It is irrelevant that the conduct at issue does or does not have criminal consequences.[4]
In McCready, direct evidence was presented that the defendants considered the marital status of the plaintiffs in refusing to engage in the desired real estate transaction. Our Civil Rights Act requires no more.[5]
C. DEFENDANT’S MOTION FOR SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)
Defendant brought a motion for summary disposition pursuant to MCR 2.116(C)(10). A motion under this section tests the factual sufficiency of the complaint. The movant must specifically identify issues to which it believes no genuine issue as to any material fact exists. MCR 2.116(G)(4). In opposition to the motion, the nonmoving party may not rest upon mere allegations or denials, but must proffer evidence of specific facts showing that there is a genuine issue for trial. Id.; Smith v Globe Life Ins Co, 460 Mich 446; 597 NW2d 28 (1999). Evidence offered in support of or in opposition to the motion can be considered only to the extent that it is substantively admissible. MCR *164 2.116(G)(6); Maiden v Rozwood, 461 Mich 109, 121; 597 NW2d 817 (1999).
In evaluating a motion for summary disposition brought under this subsection, a trial court is required to consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). Quinto v Cross & Peters Co, 451 Mich 358; 547 NW2d 314 (1996).
In the instant case, defendant’s motion for summary disposition maintains that its refusal to renew plaintiff’s contract did not relate to his marital status. In response, plaintiff offered the affidavit of defendant’s outside operations manager, Patrick Godfrey. Mr. Godfrey averred that, “[o]n several occasions,” he overheard three board members “specifically express their disapproval” of plaintiff’s divorce, state that the situation was “disgusting,” refer to plaintiff as a “slut,” and state that they “had to get rid of him.”
Plaintiff argues that sufficient evidence was presented that, at a minimum, defendant harbored mixed motives when it discharged him. Evidence of mixed motives, when one motive is impermissible under the Civil Rights Act, is sufficient to withstand summary disposition. In such a case, the impermissible factor must be a determining factor. See Matras v Amoco Oil Co, 424 Mich 675, 682-683; 385 NW2d 586 (1986). When the Court of Appeals evaluated plaintiff’s claim as one related to his pending divorce and *165 adultery, it failed to evaluate whether the pending divorce was a determining factor.
Likewise, the trial court did not consider the affidavit suggesting that the defendant may have acted on an impermissible motive. In granting defendant’s motion, the trial court merely concluded that any discrimination was motivated by plaintiff’s cohabitation with his mistress and did not specifically address the adequacy of the affidavit. There is little evidence in the record indicating that the trial court considered the evidence contained in the affidavit as required by MCR 2.116(G)(5). We therefore remand this case to the trial court. On remand, the trial court is to consider defendant’s motion for summary disposition, and plaintiff’s response thereto, in conformance with MCR 2.116(G)(4)-(6).[6]
D. RESPONSE TO THE DISSENT
The dissent consciously and wilfully chooses to ignore the holding that has been stated several times throughout this opinion—that adverse action against an individual for conduct, without regard to a protected status, provides no basis for recourse under the Civil Rights Act. This construction is required because the act provides that it is unlawful to discriminate “because of one of the enumerated protected characteristics.[7] Where no direct evidence of *166 discrimination based on one of the protected characteristics exists, the burden is on the plaintiff to establish a link between the conduct and a protected status. Absent evidence that the reason offered for the alleged discriminatory action is merely pretextual, the claim fails. Hazle v Ford Motor Co, 464 Mich 456; 628 NW2d 515 (2001). However, where there is sufficient evidence of pretext, the claim survives.
The dissent incorrectly maintains that our holding creates a “rule per se excluding conduct. . . .” Post at 169. However, as we have made clear, conduct may be the subject of protection under the Civil Rights Act if such conduct is mere pretext for action based on consideration of a protected status category.[8] In fact, the rule we articulate is undeniably consistent with the language of the statute, which protects enumerated characteristics, not conduct. This rule is also consistent with our jurisprudence under the Civil Rights Act. Like any other prima facie case of discrimination, a claim for marital status discrimination survives if a plaintiff can establish that adverse action was taken because of a protected status notwithstanding that conduct is asserted as the basis for the challenged action. However, in this case, plaintiff has not needed to posture his discrimination action as a *167 prima facie case predicated within the McDonnell Douglas[9] framework. Rather, this case is premised upon an allegation of direct evidence of marital status animus.
Instead of simply adhering to the plain language of the statute and applying the analytical frameworks that currently exist in civil rights jurisprudence, the dissent prefers to engage in what it considers a more “thoughtful analysis” of marital status discrimination claims-an analysis that ponders the “essential conception^] of human dignity” as well as whether adverse actions are “motivated by moral judgments about a person’s conduct. . . .” Post at 171. To say the least, these philosophical musings are not found within the canons of statutory construction. Accordingly, we simply decline to circumvent the language of the statute in favor of the sociological and moral inquiry favored by the dissent.[10]
V. conclusion
The clear language of the Civil Rights Act prevents only consideration of an employee’s protected status—here, marital status. We further hold that an employee’s conduct or misconduct is not a protected *168 status under the employment provisions of the act, and our opinion in McCready II should not be read otherwise. Because there is no indication that the trial court considered plaintiffs evidence in opposition to the motion for summary disposition as required by the court rules, we vacate the holding of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.
Corrigan, C.J., and Taylor and Markman, JJ., concurred with Young, J.

 Unpublished opinion per curiam, issued October 6, 2000 (Docket No. 216907).

 Plaintiff did not appeal the Court of Appeals ruling on the breach of contract claim, so that issue is not before us.

 We note that the adultery statute applies equally to married and unmarried individuals. MCL 750.29 defines adultery as “sexual intercourse of 2 persons, either of whom is married to a third person.” (Emphasis added.) Thus, because plaintiff’s mistress was married, plaintiff would have been engaging in adultery even if he had been unmarried. This language alone demonstrates the irrelevancy in this case of the dissent’s observation, post at 170, that the Civil Rights Act protects persons from discrimination “on the basis of acts found immoral solely because of one’s status.”

 Although the dissent takes pains to concur in this proposition, post at 172, it is important to understand that our opinion asserts this only because we believe that the act protects status and not conduct.

 Contrary to the dissent, post at 170, we do not suggest that McCready II is about a “right to cohabit.” It is the dissent that appears to interpret it in this manner. Rather, the majority views McCready II as a case focused upon marital status discrimination, one of the express categories of statutory protection under the Civil Rights Act.

 In so remanding, we form no opinion, implicitly or explicitly, regarding whether plaintiff has submitted admissible evidence of specific facts sufficient to raise a genuine issue of material fact.

 The distinction that this opinion draws between conduct and status, and that the dissent characterizes as “artificial,” post at 173, is a direct function of the words “because of.” While there are other statutes that limit the scope of private and public decision making, the Civil Rights Act merely prohibits actions that are taken with regard to certain types of sta *166 tuses, “because of these characteristics. It does not prohibit actions that are legitimately taken for any other reason.

 Contrary to the suggestions of the dissent, post at 173, we impose no requirement that a plaintiff must offer statements on the part of a defendant expressly communicating a prejudice toward persons of a protected status. Rather, “an invidious purpose may often be inferred from the totality of relevant facts,” Washington v Davis, 426 US 229, 242; 96 S Ct 2040; 48 L Ed 2d 597 (1976). Such an assessment “demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.” Arlington Hts v Metro Housing Dev Corp, 429 US 252, 266; 97 S Ct 555; 50 L Ed 2d 450 (1977).

 McDonnell Douglas Corp v Green, 411 US 792, 93 S Ct 1817, 36 L Ed 2d 668 (1973). The McDonnell Douglas approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination.

 Needless to say, we do not agree with the dissent’s characterization of this opinion as less than “honest,” post at 171, or as “shallow,” post at 172, because it does not reach the results preferred by the dissent. In this same regard, we would view the dissent as far more straightforward if it did not pay homage to a “societal interest in []fidelity,” post at 171, at the same time that it concludes—in our judgment, without legislative warrant—that there is civil rights protection for adulterous conduct.