**Michigan Supreme Court**
Lansing, Michigan 48909

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 16, 2003**

ROBERT R. ANDERSON and CHRISTINE M.
ANDERSON, individually and as next
friends of ROBERT C. ANDERSON, a
minor,

    Plaintiffs-Appellees,

v                                                    No. 121587

PINE KNOB SKI RESORT, INC.,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

    This case concerns Michigan's Ski Area Safety Act (SASA),
MCL 408.321 *et seq.*, and whether a skier's collision with a
timing shack is a danger that inheres in the sport, precluding
recovery for injuries that result.  We conclude that it is
such a danger and that defendant is entitled to judgment as a
matter of law under the SASA.

## I. FACTS AND LOWER-COURT ACTIONS

Robert C. Anderson was a member of his high school's varsity ski team. On January 5, 1999, he participated in an interscholastic giant-slalom competition, scheduled at Pine Knob Ski Resort, Inc. (Pine Knob). While his first run was uneventful, on his second run, after passing the last gate on the way to the finish line on the slalom racecourse, he "caught an edge" as he neared the finish line and lost his balance. Before he could recover, he collided with the shack housing the race timing equipment. He suffered lacerations to his face, arm, and leg and broke several bones and teeth.

Anderson, through his parents as his next friends, sued, alleging negligence by the resort. Pine Knob responded by seeking summary disposition on the basis that it, as a ski-area operator, was immune from premises-liability claims by recreational skiers, of the sort here presented, because of the SASA. Pine Knob also argued that summary disposition was warranted, should it fall outside the protections of the SASA, under the common-law doctrine that bars recovery for plaintiffs who are injured by open and obvious hazards. The trial court denied defendant's motion, ruling that these claims fell

outside the immunity granted by the SASA and that questions of fact existed, foreclosing summary disposition on the common-law premises-liability issue.

On appeal, the Court of Appeals affirmed in an unpublished opinion per curiam, agreeing that this circumstance fell outside the SASA. With regard to defendant's assertion that the danger was open and obvious to plaintiff and, thus, the claim was barred on that common-law basis, the Court of Appeals agreed it was open and obvious, but held that the bar did not apply here because the risk of harm was unreasonable.

We granted defendant's application for leave to appeal. 467 Mich 897 (2002).

## II. STANDARD OF REVIEW

This case concerns a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10), as well as a matter of statutory construction. We are asked to determine whether a set of circumstances falls within the scope of MCL 408.342(2). To do this, if the language of the statute is clear, we simply apply the terms of the statute to the circumstances of the case. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159-160; 645 NW2d

643 (2002). Because this is a matter of law and concerns a summary-disposition motion under MCR 2.116(C)(10), we review de novo. *Chandler v Muskegon Co*, 467 Mich 315, 319; 652 NW2d 224 (2002).

### III. ANALYSIS

The Legislature, in 1962, enacted the SASA in an effort to provide some immunity for ski-area operators from personal-injury suits by injured skiers. The statute states:

> (1) While in a ski area, each skier shall do all of the following:
>
> (a) Maintain reasonable control of his or her speed and course at all times.
>
> (b) Stay clear of snow-grooming vehicles and equipment in the ski area.
>
> (c) Heed all posted signs and warnings.
>
> (d) Ski only in ski areas which are marked as open for skiing on the trail board described in [MCL 408.326a(3)].
>
> (2) Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making

4

or snow-grooming equipment. [MCL 408.342.]

As can be seen, this act specified that skiers have the responsibility to ski under control, as well as to heed signs and warnings and avoid snow-grooming vehicles and equipment. Moreover, the act continued that, by skiing, skiers are held to have accepted certain types of risks from dangers that inhere in the sport as long as those dangers are "obvious and necessary." *Id.*

In determining if the potential of collision with a timing shack is a danger inherent in the sport and, if it is, whether it was a danger that was obvious and necessary, we must study the structure of the statute and the language employed by the legislators in MCL 408.342(2).

This subsection identifies two types of dangers inherent in the sport. The first can usefully be described as natural hazards and the second as unnatural hazards. The natural hazards to which the act refers without limit are "variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris . . . ." MCL 408.342(2). The unnatural hazards include

5

"collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment." MCL 408.342(2). For both types of hazards, the examples are clearly only examples because the Legislature specifically has indicated that the covered dangers are not limited to those expressly described. The examples are employed to give the reader guidance about what other risks are held to be assumed by the skier. We undertake this analysis by determining what is common to the examples. This exercise is what legal scholars describe as discerning meaning by use of the doctrine of ejusdem generis,[1] and leads us to conclude that the commonality in the hazards is that they all inhere in the sport of skiing and, as long as they are obvious and necessary to the sport, there is immunity from suit.

With that understood about the statute and its proper construction, we turn to whether the timing shack was within the dangers assumed by plaintiff as he engaged

[1]"Under the doctrine of ejusdem generis, general terms are interpreted to include only items that are 'of the same kind, class, character, or nature as those specifically enumerated." *LeRoux v Secretary of State*, 465 Mich 594, 624; 640 NW2d 849 (2002)(citation omitted).

6

in ski racing at Pine Knob.

There is no disputed issue of fact in this matter that in ski racing, timing, as it determines who is the winner, is necessary.  Moreover, there is no dispute that for the timing equipment to function, it is necessary that it be protected from the elements.  This protection was afforded by the shack that all also agree was obvious in its placement at the end of the run.  We have then a hazard of the same sort as the ski towers and snow-making and grooming machines to which the statute refers us.  As with the towers and equipment, this hazard inheres in the sport of skiing.  The placement of the timing shack is thus a danger that skiers such as Anderson are held to have accepted as a matter of law.

In adopting this approach, we reject the argument of the plaintiff, which was adopted by the Court of Appeals, that, while some sort of protection of the timing equipment may have been required, the shack was larger and more unforgiving than other imaginable, alternative timing-equipment protection might have been.  We find nothing in the language of the statute that allows us to consider factors of this sort.  Once hazards fall within

the covered category, only if they are unnecessary or not obvious is the ski operator liable.

To adopt the standard plaintiff urges would deprive the statute of the certainty the Legislature wished to create concerning liability risks. Under plaintiff's standard, after any accident, rather than immunity should suit be brought, the ski-area operator would be engaged in the same inquiry that would have been undertaken if there had been no statute ever enacted. This would mean that, in a given case, decisions regarding the reasonableness of the placement of lift towers or snow groomers, for example, would be placed before a jury or judicial fact-finder. Yet it is just this process that the grant of immunity was designed to obviate. In short, the Legislature has indicated that matters of this sort are to be removed from the common-law arena, and it simply falls to us to enforce the statute as written. This we have done.

Finally, as this matter is fully resolved by reference to the SASA, we need not consider whether defendant retains a duty under common-law premises

8

liability.[2]  In accord with this, the remaining portions of the judgment of the Court of Appeals that addressed this issue are vacated.

### IV. RESPONSE TO DISSENTS

The dissents would go even further in this matter than plaintiff has urged, advancing the remarkable proposition that this statute should be read to create a test for tort liability, which can be properly characterized as: Could this accident have been avoided if the shack were in a different place than it was?  If so, defendant loses.

We believe that this new proposed standard is a most ill-advised direction for the law to take in this case, or in virtually any other case that does not concern strict liability.  The reason is that it can be predicted with one hundred percent certainty that the answer to the dissents' question in this case, and any other case where such a standard would be applied, is: Of course, if the

---

[2]Justice Weaver, in her dissent, has discussed common-law premises-liability doctrines, in particular the "open and obvious" doctrine, and feels this case turns on the application of them to these facts.  This whole approach is off-target because the common law no longer controls once the Legislature enacts statutes that preempt it.  Const 1963, art 3, § 7.  That has happened here.

shack were somewhere else, plaintiff would not have hit it.  The problem this standard creates is that it fails to recognize that no accident, be it a skiing accident, a car accident, or an airplane crash, is unavoidable.  After all, if the defendant had not opened the ski area that day, or, to deal with our examples, the driver had not driven his car or the pilot had not taken off, then there would have been no accident.  Alas, however, defendant, having opened the ski area, or ventured to drive or fly, is liable.  Let us be clear, what the dissent proposes is nothing less than an abandonment of common-law liability rules and the imposition of strict liability on any occasion there is an accident.

When one reflects on the roots of tort law in this country, it is clear that our legal forebears spurned such a "hindsight" test and, instead, adopted a foreseeability test for determining tort liability.  See the venerable *Palsgraf v Long Island R Co*, 248 NY 339; 162 NE 99 (1928), a case that every law student since 1928 has studied, and countless hornbooks and cases too numerous to require citation, where this is made clear.  Said plainly, the common-law test for tort liability is

not a "could-it-have-been-avoided" test, rather, it is a "was-this-foreseeable-to-a-reasonable-person-in-this-defendant's-position" standard. Before today, none would have contested that there were no assertions to the contrary in our case law. No longer can that be said.

That the dissents would propose to abandon the foreseeability test and adopt the hindsight test is startling enough, but it is even more strange to do so here where we have a statute that was designed not only to preclude strict liability for ski operators, but also to preclude some doctrines of traditional, common-law liability in these areas. Nevertheless, were the dissent the majority, that is not what would take place. To be understood then is that the dissents invite us to join them in transmogrifying our law and this statute by converting both into vehicles imposing strict liability on defendants. We decline most adamantly to do so.

To deal with the beneficiaries of this statute briefly, one can only imagine their dismay, were the dissents the law, when all along they no doubt thought they were being protected by this legislation to then learn not only that they were not being protected, but

11

also that they would be in the unenviable position of not even having the defense that the accident for which they are being sued was not foreseeable. Their dismay would be justified.

In sum, the dissents are wrong as a general matter with regard to how liability is determined, and they are particularly wrong with regard to ski-area operators who are protected by the statute here under consideration that the Legislature enacted with the clear goal of advantaging, not disadvantaging, ski-area operators in tort litigation with skiers.

## V. CONCLUSION

Plaintiff's claims should have been barred as a matter of law. The risk of this collision was accepted by plaintiff and thus his claim is barred under the SASA. We reverse the judgment of the Court of Appeals. This case is remanded to the circuit court for proceedings consistent with this decision.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

# STATE OF MICHIGAN

## SUPREME COURT

ROBERT R. ANDERSON and CHRISTINE M.
ANDERSON, individually and as next
friends of ROBERT C. ANDERSON, a
minor,

    Plaintiffs-Appellees,

v                                    No. 121587

PINE KNOB SKI RESORT, INC.,

    Defendant-Appellant.
_____

CAVANAGH, J. (*dissenting*).

I respectfully disagree with the majority's conclusion that plaintiff Robert C. Anderson's collision with a timing shack is a danger that inheres in the sport and recovery is precluded under Michigan's Ski Area Safety Act, MCL 408.321 *et seq*. I believe a question of fact remains whether the danger of plaintiff's collision with the timing shack was obvious and necessary, thus making summary disposition inappropriate. Because I would affirm the decisions of the Court of Appeals and the trial court denying defendant summary disposition, I must dissent.

## I. STANDARD OF REVIEW

We review de novo decisions on motions for summary

disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Likewise, we review de novo matters of statutory interpretation. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

## II. ANALYSIS

### A. Ski Area Safety Act

This case concerns Michigan's Ski Area Safety Act (SASA), MCL 408.321 *et seq.*, particularly MCL 408.342(2), which provides:

> Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

The majority properly characterizes the two types of dangers inherent in the sport, as provided by the statute, as natural hazards and unnatural hazards. MCL 408.342(2) gives as examples the following unnatural hazards: "collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment." However, such hazards must be "obvious and necessary" before a ski operator may be protected by the

2

statute.

In this case, we must determine whether the timing equipment, including the shack in which the equipment was housed, is a danger inherent in the sport, and whether the danger is obvious and necessary. As the statute expressly states, it is the *danger* that must inhere in the sport. Timing the race itself is not the danger to be considered; the timing equipment is the danger; thus, the equipment must be the inherent danger before we can continue the inquiry posed by the statute.

It is not disputed that timing and equipment are necessary in ski racing. Nor is it disputed that timing equipment must be protected from the elements. However, it does not follow that a timing shack is necessary, or that the placement of the timing shack in this case, near the finish line of the race course at the bottom of the hill, was "obvious and necessary," as required by MCL 408.342(2). Therefore, I disagree with the majority that the placement of the timing shack is a danger skiers are held to accept as a matter of law.

Further, the unnatural hazards in the statute are not described as particular items, but *collisions* with the particular items. (E.g., "collisions with ski lift towers and their components, with other skiers, or with properly marked

3

or plainly visible snow-making or snow-grooming equipment"). Therefore, we must focus on the collision with the timing shack, not just the timing shack itself. "Location, location, location!" Contrary to the majority's analysis, location must be a factor because it relates to whether the danger of collision is necessary.

MCL 408.342(2) does not simply read that dangers that inhere in the sport are ones for which skiers assume the risk. The dangers must also be obvious and necessary. If the timing equipment can be located in a way that poses no danger of collision, such as at the top of the hill as it is now, then the danger posed by the timing shack is not "necessary" as required by MCL 408.342(2).

The inquiry is whether plaintiff assumed the risk and accepted the danger of colliding with this particular timing shack. We must examine the necessity of the shack itself, as well as the necessity of the location.

The majority accuses me of misconstruing the SASA and creating a strict-liability test for ski-area operators. Quite the contrary, it is the majority that overzealously misconstrues the SASA in favor of ski-area operators by skimming over the "obvious and necessary" requirement imposed by the Legislature. I cannot agree with the majority that simply because timing equipment is necessary, as is protection

4

for such equipment, that plaintiff's collision with the timing shack was "necessary." That the timing shack is a hazard that inheres in the sport and is of the same type as ski towers and snow-making machines does not mandate the conclusion that plaintiff accepted the risk of colliding with the timing shack as a matter of law.

I respectfully disagree with the majority's recharacterization of the question I pose in this case, *ante* at 9. I would ask, as the statute *requires*, whether the collision with the timing shack was necessary. Because there was testimony from which a jury could find that plaintiff's collision with the timing shack was not necessary, summary disposition is inappropriate.

Ultimately, in its response to my dissent, the majority misses the point with its discussion of foreseeability.[1] My focus is on the language of MCL 408.342(2). Because the statute requires the danger to be inherent as well as obvious and necessary, and because there remains a question of fact with respect to the necessity of this timing shack and its

---

[1]With regard to the majority's recitation of *Palsgraf v Long Island R Co*, 248 NY 339; 162 NE 99 (1928), I assure my colleagues that I am familiar with *Palsgraf* and do not wish to engage in any type of hindsight analysis. Instead of debating the doctrines of tort law, I simply attempt to apply the statute at issue.

location, summary disposition for defendant is inappropriate at this time. The trial court properly denied defendant's motion, and this Court should not disturb that ruling.

### B. Motion for summary disposition

In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties. MCR 2.116(G)(5). *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Such evidence is viewed in a light most favorable to the party opposing the motion—in this case, plaintiffs. *Id.* A trial court may grant a motion for summary disposition only when the affidavits or other documentary evidence show that there is no genuine issue regarding any material fact. *Id.*

In this case, there remains a genuine issue of material fact—whether the location of the timing shack, or even the timing shack itself, was necessary. I would not decide this issue as a matter of law as the majority does; rather, I would put it in the hands of the trier of fact.

There is deposition testimony in this case that it was unnecessary to place the timing shack at the bottom of the hill near the finish line. In fact, there is testimony that a shack was not necessary to house the timing equipment.

6

Robert Shick, Pine Knob's general manager, admitted it was unnecessary to place the timing shack so close to the finish line for ski races. He testified that he had seen race courses at several other ski resorts and had seen the timing shack placed at the top of the ski hill. Mr. Shick further admitted that a timing shack could be placed anywhere, it does not have to be near the finish line. Additionally, Mr. Shick testified that "reflecting upon this accident," Pine Knob reshaped the racing area and moved the timing shack further away from the finish line.

Further, three coaches who were present on the day of the accident testified that the timing shack could have been anywhere. Daniel Costigan, a ski coach for Detroit Country Day, testified that during the season after plaintiff's injury, the timing shack was on the top of the hill, off the skiing surface. Coach Costigan also testified that there was no need for a timing shack at the bottom of the hill. Coach Joseph Kosik testified at his deposition that there was flexibility in regards to the location of the timing shack. Finally, Coach Earl Rosengren testified at his deposition that the timing shack was moved after plaintiff's accident, even though it houses the same timing equipment it did at the time of the accident. Coach Rosengren also stated that there does not need to be an actual shack in which to house timing

7

equipment.

The testimony of these four individuals clearly presents a genuine issue of material fact—whether the timing shack at the bottom of the hill, or even the shack itself, was necessary, as required by MCL 408.342(2) before declaring that plaintiff assumed this danger. Thus, summary disposition is inappropriate.

### III. CONCLUSION

I would hold that plaintiff is not precluded from recovery as a matter of law. Rather, a genuine issue of material fact remains whether the danger of plaintiff's collision with the timing shack was obvious and necessary. Because there is evidence that the location of the timing shack, and even the shack itself, was not necessary, plaintiff should not be precluded from recovery under the SASA. I would affirm the decisions of the Court of Appeals and the trial court.

> Michael F. Cavanagh
> Marilyn Kelly

8

ROBERT R. ANDERSON and CHRISTINE M.
ANDERSON, individually and as next
friends of ROBERT C. ANDERSON, a minor,

    Plaintiffs-Appellees,

v                                   No. 121587

PINE KNOB SKI RESORT, INC.,

    Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

    I dissent from the majority's conclusion that plaintiff's collision with a timing shack at the end of ski racecourse is a danger that inheres in the sport of skiing, thus precluding recovery for plaintiff's resulting injuries under Michigan's Ski Area Safety Act (SASA), MCL 408.321 *et seq.*  I would affirm the Court of Appeals decision that the SASA does not operate to bar plaintiff's negligence claim.

    Further, I would conclude under *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001), that there is a question of fact regarding whether the location of the shack created an unreasonable risk of severe harm despite the danger's open and obvious nature.  Therefore, I would also

affirm the Court of Appeals decision that the circuit court properly denied defendant's motion for summary disposition pursuant to the common-law open-and-obvious-dangers doctrine.

MCL 408.342(2) provides:

> Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

It is undisputed that the timing shack was obvious. Plaintiff testified that he knew it was there. The question under the statute is whether the timing shack was a *necessary* danger.[1]

_____

[1] The circuit court concluded that there was a genuine issue of material fact regarding whether the placement of the shack was necessary under MCL 408.342(2) stating:

> However, you have, really, two things, both the placement of the shack and the necessity of the shack. And the parties are disputing whether the shack was necessary. Defendant says it was because the plaintiffs' minor was participating in a race. Plaintiffs argue that a timing shack is not one of the dangers set forth in the Act. Also, the shack could have been placed anywhere.
>
> So, as I say, it's placement and, you know, necessity. You might need a timing shack for a trial, to time the runs. But where are you going to put it?

The location of the shack is relevant to the question of the necessity of the danger posed because the statute reads that the dangers inherent in the sport of skiing include, not just the hazards themselves, but the danger of "injuries which can result from . . . collisions with" such hazards. MCL 408.342(2). This language makes the placement of the shack relevant when considering the necessity of dangers that are not expressly enumerated in the statute.

The deposition testimony, including that of plaintiff's coach and defendant's general manager, reveals that the placement of the shack approximately eight to twenty feet from the finish line was not necessary. Testimony revealed that the shack was portable and that it could be located at other places on the hill, including at the top of the course.

Nevertheless, the majority concludes as a matter of law that the placement of the shack is a danger that inheres in the sport of skiing, because the timing equipment required protection from the elements. While I agree that timing equipment is necessary to ski racing, I do not agree as the majority implies that the danger of collision posed by the placement of a portable timing shack is analogous to the danger of collision posed by ski lift towers and snow-making and grooming equipment.

Ski lift towers are required to carry skiers up the hill

3

and snow-making and grooming equipment must be placed where snow and snow grooming is needed.[2]  The placement of equipment related to these functions is a matter of necessity.  By contrast, it was undisputed that the timing shack could be located anywhere on the hill.  Therefore, I dissent from the majority's conclusion that the timing shack in this case constitutes a necessary hazard under the SASA and would hold that the plaintiff's negligence claim is not barred as a matter of law by this statute.

For this reason, it is necessary to address whether plaintiff's negligence claim is barred by the common-law, premises-liability doctrine of open and obvious dangers.  Any assertion that the common law of premises liability has no application following the enactment of the SASA is unfounded.  The common law of premises liability remains "in force" at ski areas under Const 1963, art 3, § 7 because the SASA is not a strict-liability statute and because the SASA does not insulate ski areas from all potential liability.[3]  The statute states that a skier assumes the risk of collision with dangers that inhere in the sport of skiing "insofar as the dangers are obvious and necessary."  MCL 408.342(2).  Where, as here, a

---

[2]The statute requires that snow-making and snow-grooming equipment be "properly marked."

[3]In other words, the SASA limits liability, but it does not eliminate liability.

4

danger does not inhere in the sport of skiing because it is not necessary under MCL 408.342(2), the next inquiry is whether there is a duty at common law.[4]

In *Lugo, supra* at 517, a majority of this Court addressed when a possessor of a premises is required to protect invitees from open and obvious dangers concluding that

> with regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of a condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.

The *Lugo* majority explained further that "only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to

---

[4]Certainly, a majority of this Court is at liberty to change the common law regarding open and obvious dangers should it be moved to do so. *Gruskin v Fisher*, 405 Mich 51, 66; 273 NW2d 893 (1979). The Legislature, on the other hand, is at liberty to enact a statute of more limited liability. See, e.g., Colo Rev Stat 33-44-107(8)(c) ("Under Colorado law, a skier assumes the risk of any injury to person or property resulting from any of the inherent dangers and risks of skiing and may not recover from any ski area operator for any injury resulting from any of the inherent dangers and risks of skiing, including: Changing weather conditions; existing and changing snow conditions; bare spots; rocks; stumps; trees; collisions with natural objects, man-made objects, or other skiers; variations in terrain; and the failure of skiers to ski within their own abilities.")

5

remove that condition from the open and obvious danger doctrine." *Lugo, supra* at 519.[5]

The defendant's general manager testified that he had considered the potential of injury from a collision with the timing shack and that the padding protecting the front of the shack was intended to prevent injury. Other parts of the shack, including the corners, however, were not padded. There was also evidence that the plaintiff "caught an edge" and that "catching an edge" can happen at any time, even to experienced skiers, requiring adequate distance to regain control.

Under *Lugo's* articulation of the open-and-obvious doctrine, it must be determined whether the timing shack created a uniquely high likelihood of harm or of severe harm to a ski racer. In my view, the placement of the timing shack in close proximity to the finish line of a giant slalom racecourse, at the point when a racer's momentum and exhaustion peak, raises a question of fact regarding whether the location of the timing shack created a uniquely high likelihood of severe harm. Ski racing demands speed. Speed

---

[5]I concurred only in the result in *Lugo* and wrote separately because I believed, as I continue to believe, that the *Lugo* majority introduced a new consideration in the determination whether a defect is unreasonably dangerous despite its obviousness, that being whether a defect created the "unreasonable risk of *severe* harm." *Lugo, supra* at 544 (opinion by WEAVER, J.).

6

carries with it increased risks, including the increased risk of collision. Under *Lugo,* the location of the timing shack is the "special aspect" that creates a question of fact regarding whether risk of severe harm was unreasonable despite the obviousness of the timing shack.

For these reasons, I would affirm the Court of Appeals decision that defendant's motion for summary disposition was properly denied by the circuit court.

Elizabeth A. Weaver

7