# STATE OF MICHIGAN

# COURT OF APPEALS

NADA YELDA,

        Plaintiff-Appellant,

UNPUBLISHED
December 14, 2017

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant-Appellee.

No. 334784
Wayne Circuit Court
LC No. 15-008094-NF

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Nada Yelda filed suit against Auto-Owners Insurance Company seeking payment of first-party no-fault benefits following a motor vehicle accident. Auto-Owners believed that Yelda was exaggerating her injuries and hired a private investigator to conduct surveillance on three separate dates. The surveillance crew apparently caught Yelda performing activities inconsistent with her claimed physical limitations. Yelda claimed that she was not the woman depicted in parts of the video and that any actions she did take were not incompatible with her testimony.

Auto-Owners sought summary dismissal of Yelda's action because its insurance policy excludes coverage when the insured makes fraudulent representations connected to a claim. The circuit court agreed and dismissed the action, but failed to actually review all the evidence presented as required by MCR 2.116(G)(5). Accordingly, we vacate the summary disposition order and remand for further consideration with review of all the evidence, specifically the surveillance video footage presented by Auto-Owners.

## I. BACKGROUND

Yelda was injured in an accident on April 21, 2015. In the following months, Yelda submitted time sheets to Auto-Owners seeking recompense for eight hours of daily attendant care and one hour of replacement services provided by her 21-year-old son, Rani. The timesheets indicated that Rani helped Yelda by completing household chores, as well as assisting his mother with bathing and dressing. In her deposition, Yelda asserted that she required such extensive help because injuries to her neck, back, and right knee prevented her from walking more than 10 to 15 feet unassisted, maneuvering stairs unassisted, bending, lifting her right leg, turning her neck, or sitting or standing for any extended period. Yelda testified that she had only driven a couple of times since the accident and could only go out with her husband or son because she needed someone to hold her hands as she walked.

-1-

As noted, Auto-Owners hired a private investigator to conduct surveillance. On June 17, October 26, and October 27, the investigator attested that he staked out Yelda's house and followed and filmed her activities. In seeking summary dismissal of Yelda's claims, Auto-Owners presented the video footage taken during surveillance as well as reports generated by the investigator. The reports included several still photos from the videos and declared that Yelda briskly walked much further than 10 to 15 feet without assistance, ascended stairs without help, bent over to peer inside a parked vehicle, and turned her neck when filmed driving on one occasion. Auto-Owners did not supply the trial court with an affidavit signed by the person or persons who conducted the surveillance or who authored the report attesting to the accuracy of both.

Auto-Owners sought summary dismissal of Yelda's suit based on the following provision in Yelda's no-fault policy: "We will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to procurement of this policy or to any occurrence for which coverage is sought." Yelda filed an affidavit in response to the motion. She averred that the videotape merely showed her "standing" and "walking," and that she never claimed an inability to perform these actions. Further, Yelda averred that she could not "identify the woman in the car and it does not appear to be me." Yelda also disputed that she appeared in several other parts of the video.

The court noted that it did not review the video footage provided by Auto-Owners, but proceeded to dismiss the suit based on fraud established by Yelda's deposition testimony, the attendant care timesheets, and the surveillance reports.

## II. ANALYSIS

Yelda appeals, challenging the circuit court's failure to review all the evidence presented as well as the merits of the court's decision.

> We review a trial court's decision on a motion for summary disposition de novo. *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 243; 704 NW2d 117 (2005). . . .
>
> A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).]

MCR 2.116(G)(5) provides, "The affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court when the motion is based on subrule (C)(1)–(7) or (10)." "If such material is submitted, it must be considered." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The court rule "impose[s] a limitation on the discretion of the trial court." *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich 362, 377; 775 NW2d 618 (2009). "Accordingly, if a party refers to and relies on an affidavit, pleading, deposition, admission, or other documentary evidence, and that evidence is then filed in the action or submitted by the parties, the trial court must consider it." *Id*. (quotation marks and citation omitted).

The circuit court did not consider the surveillance videos presented by Auto-Owners. The court advised, "I should tell you we don't have the equipment in the courtroom to play the surveillance videos, but I understand the respectful [sic] arguments." Yelda specifically challenged the court's failure to view the videos in her motion for reconsideration and the court did not claim to have viewed the footage in its order denying reconsideration. Apparently the court relied solely on the surveillance report and the investigator's unsworn statement that Yelda had engaged in certain activities as depicted in still and video images.

In *Veenstra v Washtenaw Country Club*, 466 Mich 155, 157; 645 NW2d 643 (2002), the plaintiff filed suit against his employer alleging that he was terminated because of his marital status—because he was going through a divorce. In response to the defendant's motion for summary disposition, the plaintiff presented an affidavit from the defendant's outside operations manager, averring that he overheard three board members discussing the plaintiff's divorce in a negative fashion and stating "that they 'had to get rid of him.' " *Id*. at 164. The Supreme Court found "little evidence in the record indicating that the trial court considered the evidence contained in the affidavit as required by MCR 2.116(G)(5)" before dismissing the plaintiff's action. *Id*. at 165. Accordingly, the Court remanded to the circuit court for reconsideration of the summary disposition and responsive motions under the proper standards. *Id*.

We are bound to do the same thing here. The evidence may be strong that Yelda committed fraud, but the court did not consider all the evidence as required by MCR 2.116(G)(5) before rendering its decision on Auto-Owners' (C)(10) motion.

Moreover, by failing to review the footage, the court did not resolve a factual issue raised by Yelda. Yelda contended that she was not the individual depicted in several of the still photos taken from the surveillance footage and that any acts attributable to her did not render her PIP claims fraudulent. Once the circuit court views the footage, it will be able to put the photos in context and thereby determine whether a genuine question of fact exists regarding Yelda's identity. It has yet to do so, however, and must do so on remand. And although Auto-Owners need not have accompanied the investigator's report and video with an affidavit attesting to their accuracy, the circuit court erred by crediting the unsworn report over Yelda's sworn affidavit.

Given our determination that the circuit court improperly reviewed Auto-Owners' summary disposition motion, we need not reach Yelda's substantive challenge to the court's order. We caution Yelda, however, that if the circuit court ultimately deems her claims fraudulent, it may also deem them frivolous. A circuit court is permitted to sanction a party for raising frivolous claims pursuant to MCR 2.625(A)(2).

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. In light of the strength of the evidence in this case and our grant of relief on procedural grounds only, we direct that Yelda may not tax costs pursuant to MCR 7.219(A).

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien