*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY WILLIAMS,

        Plaintiff-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

        Defendant-Appellant,

and

KRISTIN ANDERSON,

        Defendant.

UNPUBLISHED
September 17, 2019

Nos. 343261; 343262
St. Clair Circuit Court
LC No. 17-002595-CD

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

In this employment dispute, defendant Michigan Department of Health and Human Services (DHHS), appeals the trial court's order denying its motion for summary disposition brought pursuant to MCR 2.116(C)(7) and (C)(8). In Docket No. 343261, the DHHS appeals by leave granted[1] the denial of its motion for summary disposition of plaintiff's claims under the Michigan Civil Rights Act (CRA), MCL 37.2101 *et seq*. In Docket No. 343262, the DHHS appeals as of right the portion of the trial court's order denying its motion for summary disposition of plaintiff's claims under the federal Age Discrimination in Employment Act (ADEA), 29 USC 621 *et seq*., which was premised on sovereign immunity grounds. This Court consolidated these appeals in the same order in which leave to appeal was granted in Docket No. 343261. *Williams v Dep't of Health & Human Servs*, unpublished order of the Court of Appeals,

---

[1] *Williams v Dep't of Health & Human Servs*, unpublished order of the Court of Appeals, entered September 26, 2018 (Docket Nos. 343261).

-1-

entered September 26, 2018 (Docket Nos. 343261). For the reasons set forth in this opinion, we affirm in part and reverse in part in Docket No. 343261, we reverse in Docket No. 343262, and we remand for further proceedings.

## I. BACKGROUND

This action stems from plaintiff's allegations that her termination from her employment with the DHHS was based on impermissible retaliation or discrimination. According to plaintiff's complaint, plaintiff was employed as a foster care specialist by the DHHS in St. Clair County. In this capacity, plaintiff appeared at a court hearing to address the placement of a minor child. During the hearing, plaintiff informed the court that she was "working on the ICPC"[2] in the case. The complaint alleged that when the judge asked why the ICPC had not been completed, plaintiff responded that she "was following the instructions of her Supervisor," who was defendant Kristin Anderson. Anderson denied that she had instructed plaintiff "not to prepare an ICPC," and the judge subsequently found plaintiff in contempt of court. Plaintiff's employment was terminated.[3]

Plaintiff filed a three-count complaint against the DHHS and Anderson. In Count I, plaintiff alleged that the CRA was violated because the termination of her employment was "based on circumstances that make it more plausible than not that the termination of her employment was either in retaliation for having engaged in protected conduct under the Act and/or was based upon discrimination based on her gender, age, and/or race." According to the allegations in the complaint, plaintiff "had observed a pattern and practice on the part of the Department in the St. Clair County location where female, African-American employees were either terminated or forced to resign and/or were subject to false accusations and/or were subject to heightened strict scrutiny and/or were subject to heightened disciplined [sic] and were disciplined more harshly than similarly situated white employees at the Department at the St. Clair location."[4] Plaintiff further alleged that she "had previously engaged in protected conduct under the Act, having raised issues of discrimination previously." Plaintiff alleged that

---

[2] Plaintiff's use of the term "ICPC" refers to the Interstate Compact on the Placement of Children. See MCL 3.711 *et seq*.

[3] While it appears from plaintiff's presentation of the factual allegations in her complaint that she was terminated from her employment after she was found in contempt of court for her statements at the hearing, the dates on which plaintiff alleged these events occurred are inconsistent with this theory. Plaintiff alleged that the hearing occurred on June 27, 2017, and that she was terminated from her employment on October 7, 2016. Plaintiff filed her complaint initiating this lawsuit on October 6, 2017. The parties have not raised any issue related to this apparent factual discrepancy, so we will not discuss it further.

[4] Plaintiff's complaint does not explicitly state plaintiff's race, age, or gender, although it can fairly be gleaned from the allegations in the complaint that plaintiff claims to be within a protected class under the CRA due to her age, as well as being African-American and female.

Anderson had instigated the actions leading to plaintiff's wrongful termination.[5] In Count II, plaintiff alleged that the ADEA was violated based on the same allegations.[6] In Count III, plaintiff claimed that there had been a violation of the Fourteenth Amendment, 42 USC 1981, and 42 USC 1983, alleging that she was terminated based on her race or in retaliation for engaging in protected conduct because other similarly situated employees who were not African-American were not subjected to termination based on incidents similar to, or more severe than, the incident that led to plaintiff's termination. Plaintiff further alleged in this count that Anderson was "acting under color of state law in taking action to instigate the termination of [plaintiff] under circumstances where similarly situated white employees were not discharged."

In lieu of filing an answer, the DHHS filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8). The DHHS argued that with respect to each count, plaintiff had failed to state a claim on which relief could be granted. In particular, the DHHS argued that plaintiff's complaint contained only conclusory allegations of discrimination and failed to allege any facts directly showing that unlawful discrimination or retaliation occurred. The DHHS further argued that plaintiff had also failed to allege sufficient facts to establish a prima facie case of discrimination or retaliation under the *McDonnel Douglas*[7] burden-shifting framework and that the DHHS nonetheless had a legitimate reason—i.e., that plaintiff was held in contempt for failing to complete an ICPC—to terminate plaintiff's employment. Additionally, the DHHS argued that plaintiff's claims against it under the ADEA and the federal constitution were barred by sovereign immunity.

Plaintiff opposed the motion, seemingly arguing that the summary disposition motion was premature because plaintiff had not yet had the opportunity to conduct discovery. Plaintiff also argued that sovereign immunity did not bar her from bringing her claim under the ADEA against the DHHS in state court. Plaintiff maintained that with respect to her ADEA and CRA claims, she had adequately stated claims on which relief could be granted because her complaint sufficiently informed the DHHS of the nature of the claims it was required to defend. Furthermore, plaintiff appeared to indicate that she could file an amended complaint alleging that she was found in contempt in the former court proceeding because Anderson wrongfully denied instructing plaintiff not to complete the ICPC.

At the hearing on the summary disposition motion, the parties presented arguments consistent with their written briefs. The trial court ruled from the bench as follows:

> I think further development is going to be essential here. I don't disagree with
> [the] argument that there has not been fact specific allegations contained in the

---

[5] Anderson was subsequently dismissed from this action without prejudice because she did not receive timely service of process. Anderson is not a party to this appeal.

[6] Count II also alleged that these actions violated Title VII of the federal civil rights act, 42 USC 2000e *et seq.*, but this claim was subsequently dismissed with prejudice by stipulation of the parties. This claim is not at issue in the instant appeal.

[7] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

-3-

Complaint. I'm going to deny the motion without prejudice. I'll require that the Complaint be amended to include specificity as to what acts they relied upon in terms of violations of your client's rights. The mere assertion of allegations themselves is not sufficient. And with a little bit of additional time, maybe through depositions or other interrogatories that you might be able to get to the basis for this, but if it doesn't develop more than it has thus far, it's just bold assertions and then I'll be happy to revisit the issue.

Counsel for the DHHS asked the trial court if it was ruling on the ADEA claim, and the court responded, "I'm going to hold off on that, as well." The trial court subsequently entered a written order denying defendant's motion for summary disposition in its entirety "for the reasons stated on the record." Thus, it appears that the trial court intended to deny the DHHS's summary disposition motion at that juncture while expressly indicating that the DHHS would be permitted to raise the same arguments at a later date.[8]

These appeals ensued.

## II. DOCKET NO. 343261 – PLAINTIFF'S CRA CLAIMS

In Docket No. 343261, the DHHS argues that it was entitled to summary disposition in its favor under MCR 2.116(C)(8) on plaintiff's CRA claims because plaintiff's complaint alleged facts that conclusively demonstrate that plaintiff cannot establish a claim of discrimination or retaliation.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). MCR 2.116(C)(8) permits a court to grant summary disposition if "[t]he opposing party has failed to state a claim on which relief can be granted." A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint solely on the basis of the pleadings." *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010). "When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. *Id*. at 304-305. "Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Id*. at 305 (quotation marks and citation omitted).

---

[8] Plaintiff indicated in her responsive brief to the DHHS's motion for summary disposition that she would stipulate to dismissing the claims in Count III against the DHHS. However, it does not appear from our review of the lower court record that the trial court ever issued an order dismissing these claims. The only claims actually dismissed against the DHHS pursuant to a stipulated order were plaintiff's Title VII claims in Count II. Nevertheless, the claims in Count III are not at issue in this appeal.

B. ANALYSIS

According to the complaint, plaintiff's CRA claims were based on allegations that her termination was based on unlawful discrimination or retaliation under the CRA.

Section 202(1)(a) of the CRA provides as follows:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202(1)(a).]

Additionally, § 701(a) of the CRA states:

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701(a).]

Our Supreme Court has explained that a discrimination claim under the CRA may be established either by direct evidence or by application of the burden-shifting approach of *McDonnell Douglas Corp v Green*, 411 US 792, 802-803; 93 S Ct 1817; 36 L Ed 2d 668 (1973):[9]

In some discrimination cases, the plaintiff is able to produce direct evidence of racial bias. In such cases, the plaintiff can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case. For purposes of the analogous federal Civil Rights Act, the Sixth Circuit Court of Appeals has defined "direct evidence" as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."

In many cases, however, no direct evidence of impermissible bias can be located. In order to avoid summary disposition, the plaintiff must then proceed through the familiar steps set forth in *McDonnell Douglas*, [411 US at 802-803]. The *McDonnell Douglas* approach allows a plaintiff "to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the

---

[9] The *McDonnell Douglas* approach applies to evaluating summary disposition motions involving circumstantial evidence of discrimination, but it does not apply to a jury's decision-making process at trial. *Hazle v Ford Motor Co*, 464 Mich 456, 466-467; 628 NW2d 515 (2001).

plaintiff was the victim of unlawful discrimination." Although originally created for use in race discrimination cases, we have adopted the *McDonnell Douglas* approach for use in age and gender discrimination cases brought under the Michigan Civil Rights Act as well. [*Hazle v Ford Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001) (some citations omitted).]

The *McDonnell Douglas* framework requires a plaintiff to "first offer a 'prima facie case' of discrimination," i.e., that "(1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination."[10] *Id*. at 463. The fourth element has also been stated as requiring the plaintiff to show that "she was discharged under circumstances that give rise to an inference of unlawful discrimination." *Lytle v Malady (On Rehearing)*, 458 Mich 153, 173; 579 NW2d 906 (1998) (opinion by WEAVER, J.) Much like a discrimination claim, "[t]o establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).

"When the plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises." *Hazle*, 464 Mich at 463 (quotation marks and citation omitted). The defendant employer may then rebut this presumption by articulating "a legitimate, nondiscriminatory reason for its employment decision." *Id*. at 464. If the defendant satisfies this requirement, then the plaintiff can only survive a motion for summary disposition by demonstrating "that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Id*. at 465 (quotation marks and citation omitted).

In this case, plaintiff alleged that she was terminated from her employment, in violation of the CRA, "based on circumstances that make it more plausible than not that the termination of her employment was either in retaliation for having engaged in protected conduct under the Act and/or was based upon discrimination based on her gender, age, and/or race." Plaintiff further alleged that she "had observed a pattern and practice on the part of the Department in the St. Clair County location where female, African-American employees were either terminated or forced to resign and/or were subject to false accusations and/or were subject to heightened strict scrutiny and/or were subject to heightened disciplined [sic] and were disciplined more harshly than similarly situated white employees at the Department at the St. Clair location." Plaintiff

---

[10] As the *Hazle* Court noted, "the facts will necessarily vary in discrimination cases," and "the elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand." *Hazle*, 464 Mich at 463 n 6.

also alleged that she "had previously engaged in protected conduct under the Act, having raised issues of discrimination previously."

MCR 2.111(B)(1) requires a complaint to include a "statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend." This Court has previously explained that this court rule provision is "consistent with a notice pleading environment" and that "[t]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Dalley*, 287 Mich App at 305 (quotation marks and citations omitted).

From the allegations in the complaint this case, it can be discerned that plaintiff claimed that she suffered an adverse employment action in the form of being terminated from her employment and that this action was taken either in retaliation for having engaged in the protected activity of asserting a discrimination claim or because of unlawful discrimination on the basis of her status as a member of a protected class defined by her age, gender, or race. Further, plaintiff's allegation that she was actually employed by the DHHS until she was terminated suggests that she had been determined to possess the necessary qualifications for her position. The allegations in plaintiff's complaint outline a theory that her issues involving the contempt finding in the previous matter involving the placement of a minor child and her eventual termination stemmed from her protected status based on her age, gender, or race. Although the DHHS argues that plaintiff's admission that she was held in contempt of court based on her failure to complete an ICPC in the prior matter involving a minor child conclusively demonstrates that plaintiff cannot prove that she was qualified for her position, this argument misses the point of plaintiff's claim: plaintiff essentially alleged that the response of the DHHS to this incident was unlawfully discriminatory or retaliatory. To put it more simply, it is evident from plaintiff's complaint that she alleged that her termination by the DHHS, regardless of the contempt finding, was premised on unlawful discrimination or retaliation in violation of the CRA. The essence of a discrimination claim under the CRA is that similarly situated people have been treated differently because of a protected characteristic, such as race, gender, or age. Cf. *Radtke v Everett*, 442 Mich 368, 379; 501 NW2d 155 (1993) ("[T]he essence of a sex discrimination civil rights suit is that similarly situated people have been treated differently because of their sex.").

We conclude that plaintiff's complaint stated a claim under the CRA on which relief could be granted because the allegations were sufficient to give the DHHS reasonable notice of the nature of the CRA claims it would need to defend. MCR 2.111(B)(1); *Dalley*, 287 Mich App at 305. In doing so, we are guided by our Supreme Court's recent decision in *El-Khalil v Oakwood Healthcare, Inc*, ___ Mich ___; ___ NW2d ___ (2019) (Docket No. 157846).

In *El-Khalil*, the plaintiff podiatrist held staff privileges at various Oakwood Hospitals. *Id*. at ___; slip op at 2. The plaintiff had filed a prior lawsuit against Oakwood claiming, among other things, that he had been subject to unlawful racial discrimination in violation of the CRA. *Id*. That lawsuit resulted in Oakwood being granted summary disposition in its favor on the discrimination claim. *Id*. Subsequently, the plaintiff's reappointment applications were denied at multiple Oakwood hospitals, and the plaintiff filed another lawsuit against Oakwood in which

he claimed that he had been subjected to unlawful retaliation in violation of the CRA. *Id*. at ___; slip op at 3. The plaintiff attached to his amended complaint in the second lawsuit an email exchange between himself in other physicians in which those physicians complained about the plaintiff's behavior and the plaintiff denied those allegations and argued that they "arose from racial prejudice and in retaliation for his first lawsuit." *Id*. at ___; slip op at 3-4. Oakwood moved for summary disposition under both MCR 2.116(C)(7) and (C)(8), and the trial court granted the motion without identifying the rule on which it relied. *Id*. at ___; slip op at 4. This Court on appeal determined that the trial court had actually reviewed the motion under MCR 2.116(C)(10), and we affirmed under that subrule. *Id*. at ___; slip op at 5. Our Supreme Court vacated this Court's opinion and remanded for consideration under MCR 2.116(C)(7) and (C)(8), after which this Court affirmed under (C)(8). *Id*.

Our Supreme Court reversed because this Court "erroneously evaluated plaintiff's causation allegations under MCR 2.116(C)(10)." *Id*. at ___, ___; slip op at 10, 12-13. The Supreme Court stated that "[t]he Court of Appeals' conclusion that summary disposition was appropriate because plaintiff failed to present a prima facie case of retaliation shows that it applied the wrong standard" and that "[p]laintiff adequately pleaded causation by alleging that defendants decided not to reappoint him after and *because of* his 2014 lawsuit." *Id*. at ___; slip op at 10 (quotation marks and citation omitted). Our Supreme Court further explained that "[w]hile plaintiff will need to factually establish the causal-connection element of retaliation if defendants move for summary disposition under MCR 2.116(C)(10), i.e., show more than temporal proximity between the adverse employment action and the lawsuit, it was premature for the Court of Appeals to affirm dismissal on that basis under MCR 2.116(C)(8)." *Id*. at ___; slip op at 10-11. The Supreme Court made clear that the "distinction between MCR 2.116(C)(8) and (C)(10) is one with an important difference: a claim's legal sufficiency as opposed to a claim's factual sufficiency." *Id*. at ___; slip op at 6.

Specifically, our Supreme Court in *El-Khalil* determined that the plaintiff's allegation "that defendants violated the [CRA] because they denied his reappointment in retaliation for the lawsuit he previously filed against defendants under the [CRA]" was "sufficient under MCR 2.116(C)(8) to satisfy the fourth [causal-connection] element of an ELCRA-retaliation claim." *Id*. at ___; slip op at 8. We cannot discern any meaningful difference between this allegation that the *El-Khalil* Court deemed sufficient and the allegations made by plaintiff in the instant case with respect to each of the elements of her claims under the CRA.

The DHHS primarily contends that plaintiff cannot demonstrate a prima facie case of unlawful discrimination or retaliation. However, "whether the elements of a prima facie case of discrimination have been established constitutes an evidentiary standard, *not a pleading requirement*. *Id*. at ___; slip op at 9, quoting *Swierkiewicz v Sorema N. A.*, 534 US 506, 510-511; 122 S Ct 992; 152 L Ed 2d 1 (2002) (emphasis added).

In *Swierkiewicz*, 534 US at 508,[11] the United States Supreme Court addressed the precise question implicated in the instant case by the appellate arguments advanced by the DHHS: "whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by [the United States Supreme] Court in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973)." The *Swierkiewicz* held that "an employment discrimination complaint need not include such facts and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief. *Swierkiewicz*, 534 US at 508 (quotation marks and citation omitted). The Supreme Court in *Swierkiewicz* explained in pertinent part as follows:

> The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement. In *McDonnell Douglas*, this Court made clear that "[t]he critical issue before us concern[ed] the order and allocation of proof in a private, non-class action challenging employment discrimination." In subsequent cases, this Court has reiterated that the prima facie case relates to the employee's burden of presenting evidence that raises an inference of discrimination.

> This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings." . . .

> In addition, under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case. Under the Second Circuit's heightened pleading standard, a plaintiff without direct evidence of discrimination at the time of his complaint must plead a prima facie case of discrimination, even though discovery might uncover such direct evidence. It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.

> Moreover, the precise requirements of a prima facie case can vary depending on the context and were "never intended to be rigid, mechanized, or

---

[11] Although *Swierkiewicz* was an employment discrimination case involving claims under federal statutes, our Supreme Court cited *Swierkiewicz* with approval in the context of the Michigan CRA. *El-Khalil*, ___ Mich at ___; slip op at 9.

ritualistic." Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases. [*Swierkiewicz*, 534 US at 510-512 (citations omitted; alterations in original).][12]

Accordingly, in this case, plaintiff was not required to plead facts establishing a prima facie case of unlawful discrimination or retaliation under the CRA in order to survive a motion for summary disposition under MCR 2.116(C)(8). In conclusion, we find the following statement by our Supreme Court in *El-Khalil* to be equally applicable to the instant case:

> While the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of evidence in support of the allegation cannot. Plaintiff alleged that the adverse employment action resulted from his protected activity. That is enough to withstand challenge under MCR 2.116(C)(8). The relative strength of the evidence offered by plaintiff and defendants will matter if the court is asked to decide whether the record contains a genuine issue of material fact. But that is only a question under MCR 2.116(C)(10). [*El-Khalil*, ___ Mich at ___; slip op at 9.]

Therefore, because plaintiff in this case likewise made sufficient allegations to state a claim for unlawful retaliation and discrimination under the CRA, trial court did not err by denying the motion for summary disposition on these claims under MCR 2.116(C)(8). To the extent that the trial court denied summary disposition, we affirm. However, we note that there is no apparent reason to require plaintiff to amend her complaint at this juncture when she has made no such motion; we reverse the trial court's order requiring plaintiff to file an amended complaint.

### III. DOCKET NO. 343262 – PLAINTIFF'S ADEA CLAIMS

In Docket No. 343262, the DHHS challenges the trial court's failure to dismiss plaintiff's ADEA claims under MCR 2.116(C)(7) on the basis of sovereign immunity.

### A. STANDARD OF REVIEW

As previously stated, we review de novo a trial court's decision on a motion for summary disposition. *Veenstra,* 466 Mich at 159. Whether an entity has sovereign immunity is a question

---

[12] The heightened pleading standard referenced in the above quotation "require[d] a plaintiff in an employment discrimination complaint to allege facts constituting a prima facie case of discrimination under the framework set forth . . . in *McDonnell Douglas*, [411 US at 802]." *Swierkiewicz*, 534 US at 509. This is essentially the standard for which the DHHS argues in the instant case and which we reject on the basis of the Michigan Supreme Court's decision in *El-Khalil* and the United States Supreme Court's decision in *Swierkiewicz*.

of law, which we review de novo as well. *Co Rd Ass'n of Mich v Governor*, 287 Mich App 95, 118; 782 NW2d 784 (2010).

## B. ANALYSIS

The United States Supreme Court has held "that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts." *Alden v Maine*, 527 US 706, 712; 119 S Ct 2240; 144 L Ed 2d 636 (1999). "Section 5 of the Fourteenth Amendment, however, does grant Congress the authority to abrogate the States' sovereign immunity." *Kimel v Florida Bd of Regents*, 528 US 62, 80; 120 S Ct 631; 145 L Ed 2d 522 (2000).

Nevertheless, with respect to the ADEA specifically, the United States Supreme Court held in *Kimel*, 528 US at 67, 91, that the attempt by Congress to abrogate the states' sovereign immunity in the ADEA was invalid because "the abrogation exceeded Congress' authority under § 5 of the Fourteenth Amendment." The *Kimel* Court concluded as follows:

> Our decision today does not signal the end of the line for employees who find themselves subject to age discrimination at the hands of their state employers. We hold only that, in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals. State employees are protected by state age discrimination statutes, and may recover money damages from their state employers, in almost every State of the Union. Those avenues of relief remain available today, just as they were before this decision.

> Because the ADEA does not validly abrogate the States' sovereign immunity, however, the present suits must be dismissed. [*Id*. at 91-92.]

Therefore, the ADEA does not provide plaintiff with a cause of action against the DHHS. *Id*.[13] We reverse the trial court's ruling denying the motion for summary disposition on plaintiff's ADEA claim and order the trial court on remand to enter an order granting summary disposition in favor of the DHHS on this claim.

---

[13] We additionally note that plaintiff has not made any argument on this issue in response to the argument raised on appeal by the DHHS. Plaintiff has thus apparently abandoned her opposition on this issue. It is not up to this Court "to discover and rationalize the basis for [plaintiff's position], or unravel and elaborate . . . [her] arguments, and then search for authority either to sustain or reject [her] position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto